In re J.W. KNAPP COMPANY, Debtor.

UNITED STATES TRUSTEE,
Trustee–Appellant,

v.

PORTER, WRIGHT, MORRIS &
ARTHUR, Trustee–Appellee.

No. 90–1116.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1991.

Decided April 18, 1991.

John Joseph Nesius, argued, Asst. U.S. Trustee, Charleston, W.Va. (John E. Waites, U.S. Trustee, Charleston, W.Va., Martha L. Davis, Gen. Counsel, Hugh B. Ward, Jr., Executive Office for U.S. Trustees, Washington, D.C., on brief), for trustee-appellant.

Terri A. Zall, argued, Washington, D.C. (Gordon W. Johnston, Porter, Wright, Morris & Arthur, Columbus, Ohio, on brief), for trustee-appellee.

Before SPROUSE, Circuit Judge, DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

SPROUSE, Circuit Judge:

United States Trustee John Waites appeals the district court's affirmance of a bankruptcy court decision to award compensation to the attorney for the Chapter 7 trustee. The bankruptcy court awarded compensation to J. Ralston Werum, of the law firm Porter, Wright, Morris & Arthur, for computing distribution, reviewing checks, preparing checks and reviewing and organizing returned checks.

On appeal, Waites contends that both the bankruptcy court and the district court abused discretion by awarding compensation for services that were essentially ministerial duties of the trustee performed by the attorney and not compensable. We agree, and reverse.

## I

The J.W. Knapp Company filed a voluntary petition under Chapter 11 of the Bankruptcy Code in May 1980. Proceeding in the United States Bankruptcy Court for the Northern District of West Virginia, the case was converted to a Chapter 7 liquidation in December 1980 and James Harkins[1] was appointed trustee. Shortly thereafter, Porter, Wright, Morris & Arthur was retained as counsel for the trustee. In 1985, the firm computed all amounts to be distributed for allowed claims and prepared all distribution checks and related matters. The bankruptcy court approved compensation for these services. Harkins filed a Supplemental Final Report and a final decree closing the estate in 1986.

The case was reopened on March 21, 1988, upon Harkins' motion to distribute $181,448.86 he had received on behalf of the debtor's estate. The bankruptcy court again appointed Werum attorney for the trustee to assist in the administration of the reopened case.[2]

On June 15, 1989, Werum's firm filed a final "Application for Fees and Expenses of Attorneys for the Chapter 7 Trustee" requesting $4,500 in attorney's fees and $267.07 in expenses in connection with computing distribution, reviewing checks, preparing checks and reviewing and organizing returned checks.[3] The office of the United States Trustee objected to the application pursuant to 28 U.S.C. § 586(a)(3)(A)

on the basis that the time spent performing ministerial and administrative duties of the trustee was not compensable to the attorney for the trustee.

After a hearing, the bankruptcy court ruled in favor of Werum, finding that even though the services were ordinarily performed by trustees, and attorney fees are not normally awarded for them, the unusual character of the case—principally the fact that 928 creditors were to receive distributions for compensation—presented an exception to the general rule. It allowed all but 2.25 hours of the billed time. It held that

> this is not the usual bankruptcy case for the Northern District of West Virginia. The creditor matrix contains 928 addresses. After the initial distribution, 297 checks were returned. The West Virginia Northern District trustees are simply not organized to administer cases where there are 928 creditors. To require the trustee to calculate and distribute this many checks is unreasonable—he must have administrative assistance.

It further found as precedence the previous bankruptcy judge's approval of this type of service in the principal case prior to the reopening for distribution. The district court affirmed.

## II

A trustee's administrative duties are set out in 11 U.S.C. § 704.[4] While the code

---

1. Harkins is a sole practitioner who has one secretary and no paraprofessional assistant.

2. Appellee claims that the trustee's records of the case were destroyed at the close of the case in 1986 and the bankruptcy court's records were placed in storage in Philadelphia. The law firm therefore retained the only records relating to claims distributions.

3. The application also asked for compensation for interoffice conferences, reviewing files, legal research and preparation of documents to reopen the case. While the United States Trustee further objected in the bankruptcy court that the time spent on various tasks appeared to be excessive, he did not object to these fees on the basis at issue here.

4. 11 U.S.C. § 704 provides:

> The trustee shall—
> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
> (2) be accountable for all property received;
> (3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;
> (4) investigate the financial affairs of the debtor;
> (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
> (6) if advisable, oppose the discharge of the debtor;
> (7) unless the court orders otherwise, furnish such information concerning the estate

authorizes employment of professionals for representation and assistance, the legislative history indicates that lawyers were contemplated to do the former rather than the latter.[5]

In *In re Meade Land and Development Co.*, 527 F.2d 280 (3d Cir.1975), the court found that in drawing the distinction between necessary legal services and ministerial duties of the trustee requiring only sound business judgment, a court should consider whether the services could colorably constitute the type of services one would reasonably expect an attorney to perform under the circumstances. It held in connection with the negotiations and preparations of accounts and reports for the receiver and trustee, that, normally the responsibility of liquidating the assets of a bankruptcy estate rests solely with the trustee. "In some circumstances, however, the assistance of counsel may be required by a Trustee to arrange for the sale of assets and to negotiate with prospective purchasers as to the terms and legal implications thereof in order to preserve the estate and obtain the highest possible bid for the assets." *Id.* at 286. Similarly, in *In re King*, 88 B.R. 768, 770 (Bankr.E.D. Va.1988), the court held that "[i]n unique circumstances when matters normally handled by the trustee involve complex legal issues, and the applicant has demonstrated the need for his involvement, courts have allowed compensation."

 In *In re Whitney*, 27 B.R. 352 (Bankr.D.Me.1983), the court said that, in fixing compensation, the court must distinguish trustees' services from attorneys' services and "[w]hether an act is that of a 'trustee enlightened by legal understanding' or that of a 'lawyer made knowledgeable of bankruptcy by his trustee appointment.'" *Id.* at 354. *See also In re McAuley Textile Corp.*, 11 B.R. 646 (Bankr.D.Me.1981); *In re Best Pack Seafood, Inc.*, 21 B.R. 852 (Bankr.D.Me.1982). We agree with the principle stated in these decisions to the effect that courts may not compensate an attorney for services statutorily required by the trustee. Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties, and only to the extent of matters requiring legal expertise. In the case *sub judice*, the large number of creditors required more administrative work, but did not pose unique or complex legal issues. In our view, compensation to the attorney for the trustee was not appropriate.

■ Finally, we agree with the United States Trustee that the bankruptcy court's ruling should not have been controlled by the former judge's ruling granting attorney's fees in connection with the initial distribution.

REVERSED.

---

and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

5. 124 Cong.Rec. 32,394; 124 Cong.Rec. S 17,408 (Oct. 6, 1978). *See also In re King*, 88 B.R. 768, 769 (Bankr.E.D.Va.1988).