**In re Dean A. GARCIA and Karen M. Jencks Garcia, Debtors.**

**Ferrette & Slater, Appellant,**

v.

**United States Trustee, Appellee.**

**BAP No. SC–04–1591–NMoPa.**

**Bankruptcy No. 03–06041–H7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued by Telephone Conference and Submitted on Oct. 20, 2005.

Filed—Dec. 7, 2005.

---

Gary E. Slater, Slater & Truxaw, LLP, San Diego, CA, for Appellant.

Before: NIELSEN [1], MONTALI and PAPPAS, Bankruptcy Judges.

## OPINION

NIELSEN, Bankruptcy Judge.

This is an appeal of the bankruptcy court's decision denying appellant's request for an award of professional fees and reimbursement of costs. We **AFFIRM IN PART AND REVERSE AND REMAND IN PART**.

## FACTS

Dean A. and Karen M. Jencks Garcia ("debtors") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 26, 2003.[2] Richard M. Kipperman was appointed trustee.

A principal asset was a residence located in San Marcos, California ("San Marcos Property"). Debtors scheduled its value at $255,000, reported a $175,000 first deed of trust and claimed a $59,600 homestead exemption.

The trustee obtained a real estate broker valuation for the San Marcos Property

---

1. Hon. George B. Nielsen, Jr., Bankruptcy Judge for the District of Arizona, sitting by designation.

2. Unless otherwise indicated all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

of $310,000. He calculated a return to the estate of up to $38,000, if this estimated value was obtained in a sale.

The trustee initially notified debtors' attorney that he intended to sell the San Marcos Property, but would also be agreeable to debtors' purchase. In the bankruptcy court, Ferrette & Slater ("Firm" or "Appellant") contended: "the Trustee made attempts to negotiate with Debtors' attorney regarding either a sale of the Debtors' residence, or Debtors' purchase of the net equity in the residence. These attempts were unsuccessful, and therefore the Trustee sought to employ ... Slater to assist with the resolution of certain legal issues ...." *In re Garcia*, 317 B.R. 810, 821 (Bankr.S.D.Cal.2004) (questioning the necessity for the trustee to retain counsel at this juncture).

On October 20, 2003, the Firm filed an application on behalf of the trustee for employment of the Firm as general counsel to the trustee. Relevant portions of the application provide:

2. Applicant has undertaken an investigation of the statements and representations made in the schedules

.... Applicant believes that the sale of the debtors' real property ... will likely constitute a source of recovery

....

3. Based on the above, your Applicant is informed and believes ... that sufficient assets exist to generate a dividend for the payment of the creditors ... as more particularly described in the Declaration of Gary E. Slater, filed herewith.

4. Consequently, your Applicant desires to employ .... Ferrette & Slater... as general counsel, whose attorneys have conducted a review of certain pleadings and documents on file ....

5. Your Applicant believes that the sale of the San Marcos Property will generate funds which can be used to pay the creditors ... and is necessary to preserve the estate and to prevent loss thereto. Applicant has selected Ferrette & Slater for the reason that it is familiar with the relevant facts and applicable law and is well-prepared to undertake the legal services required in this matter that may be necessary....

Attorney Slater's declaration in support of the employment application reflects:

On or about September 29, 2003... Declarant consulted with the Trustee about the scope of the proposed representation in this matter. From that consultation, the Trustee concluded it would be prudent and necessary for him to retain Ferrette & Slater, as general counsel for the following reasons:

a) ... The Trustee intends to sell the San Marcos Property. In the context of that sale, the Trustee has indicated a desire to receive an opinion from counsel regarding all legal issues including the legal adequacy of the offers for sale, to draft counteroffers, to deal with the title insurance issues, to review escrow instructions, and to assist with the closing of the sale.

b) The Trustee will also need counsel to assist him with the analysis of certain creditor's claims in this estate, except as limited above, and any other miscellaneous matters which may be appropriate for general counsel to be engaged.

The bankruptcy court entered an order authorizing employment of the Firm as general counsel on October 21, 2003. The application was "approved pursuant to 11 U.S.C. section 327 subject to review under 11 U.S.C. section 330. All rates, fees and costs are subject to court approval ...."

The court's docket reveals the Firm prepared its own employment application and

also submitted an application to hire the trustee's real estate broker. However, the docket also reflects it was the trustee who prepared an employment application to retain an accountant.

Upon approval of its employment, the Firm initiated negotiations with debtors' counsel. Eventually a settlement was reached. Debtors agreed to pay the estate $28,000 in exchange for trustee's abandonment of the estate's interest in the San Marcos Property.[3]

The Firm prepared the settlement documents and a Notice of Intended Action and Opportunity for Hearing, which was served on all creditors. There were no objections. The court entered its order approving the stipulation and compromise on January 20, 2004.

In June of 2004, Appellant filed its only fee application for services and expenses, covering September 29, 2003, through July 16, 2004. The Firm sought a total of $10,679.50 in fees and cost reimbursement of $273.15. The Firm also sought a "clean up" fee of $750.00 to deal with matters occurring after filing of the application or after the July 16, 2004, hearing date.

At the initial hearing, the bankruptcy court questioned the Firm about its services and provided an opportunity to submit a supplemental brief and declaration addressing, among other things: "1) whether some of the work performed by the firm should have been performed by the trustee; and 2) whether the time spent on the fee applications was excessive." *In re Garcia,* 317 B.R. at 815.

At a subsequent hearing, the court denied the entire application. In denying all fees, the court concluded: "In short, the trustee did not need to employ an attorney in this case." *Garcia supra* at 826–27.

Appellant timely appealed, and review has been limited to the denial of fees for employment applications, sale of the San Marcos Property and preparation of a fee application. Appellant withdrew its request for fees relating to obtaining waiver of a possible conflict of interest from the Bank of America.[4]

---

**3.** Appellant explains that upon reaching the sale agreement with debtors, the broker's services were no longer necessary. Appellant argues that the equity sale, in addition to $28,000 cash paid by debtors, also benefitted the estate in the approximate amount of $25,000–the amount saved by avoiding a broker's commission (approximately 6% of $310,000) and costs of sale (approximately 2% of $310,000). As with any settlement, however, the estate was required to give something up. While noting the costs saved by not resorting to a public sale, Appellant neglects to discuss the possible downside. In the real estate broker's employment application, prepared by Appellant, trustee asserted the sale was likely to yield a substantial net equity. Estimated net sale proceeds at the full listing price of $310,000, after deducting 8% for sales costs, would be $50,600, or $22,600 more than what the estate realized by settling with debtor.

**4.** The trustee was originally a party to the appeal. On January 31, 2005, the BAP issued a Clerk's Order requiring Appellant to file a response regarding the finality of the order on appeal and the parties to the appeal. Appellant responded on February 11, 2005. On March 22, 2005, the panel ordered that the scope of appeal was limited to a review of the denial of the Firm's final fee application. The portion of the bankruptcy court order granting interim compensation to the Chapter 7 Trustee was found to be interlocutory and not currently subject to appeal. Accordingly, trustee Richard M. Kipperman has been removed as an appellant. Finally, the panel ordered that the United States Trustee ("UST") should be listed as appellee. The Clerk added this agency to the docket and service list. The UST requested to be deleted from the appeal docket. This was denied, although the UST's participation by filing a brief was deemed optional. No appellee brief has been filed.

## ISSUES

1. Whether the bankruptcy court applied the correct legal standard in disallowing all Appellant's fees and expenses.

2. Whether the bankruptcy court abused its discretion in denying compensation for services regarding the San Marcos Property sale and for preparing employment and fee applications.

## STANDARDS OF REVIEW

■■■■ A bankruptcy court's findings of fact are reviewed for clear error. Its conclusions of law are reviewed de novo. *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 857 (9th Cir.2004). We do not disturb a bankruptcy court's award of attorneys' fees, unless the court abused its discretion or erroneously applied the law. *Id.* The legal standard to determine the allowance of fees involves statutory interpretation and construction of section 330(a). It is therefore reviewed de novo. *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 106 (9th Cir. BAP 2000).

## DISCUSSION

This appeal involves an interplay of sections 704, 327 and 330(a).

The Bankruptcy Code requires the trustee to " ... collect and reduce to money the property of the estate ... and close such estate as expeditiously as is compatible with the best interest of parties in interest." § 704(1). When necessary, and with the court's approval, the trustee " ... may employ one or more attorneys ... or other professional persons ... to represent or assist the trustee in carrying out the trustee's duties under this title." § 327(a). When so employed, the trustee's attorney (or other professional) is entitled to " ... reasonable compensation for actual, necessary services rendered by such ... essary services rendered by such ...

attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title ..." § 330(a)(1).... Such compensation is not awarded, however, without limitation....

*In re Scoggins*, 142 B.R. 940, 943 (Bankr. D.Or.1992) (citing authority).

The trustee sought services of an attorney, an accountant, and a real estate broker to assist in his statutory duties. At issue is whether the services rendered by the Firm are compensable in any amount.

### 1. SECTION 330 STANDARDS

After notice and a hearing, the court may award an attorney employed under section 327:

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A),(B).

Pursuant to section 330(a)(2), "the court may... award compensation that is less than the amount of compensation that is requested." In turn, section 330(a)(3) provides that

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time *commensurate with the complexity*, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(E).

However,

[T]he court shall not allow compensation for-

(i) unnecessary duplication of services; or

(ii) services that were not-

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A).

In sum, "[s]ection 330(a)(1) authorizes 'reasonable compensation for actual, necessary services rendered' by a professional. Section 330(a)(2) authorizes a court to award compensation that is less than the amount of compensation requested. Section 330(a)(3)(A) outlines factors a court should consider when determining what is reasonable compensation for services rendered. In addition, section 330(a)(4)(A) outlines when compensation should not be allowed." *In re Mednet*, 251 B.R. at 106.

■ *Mednet* noted a split of authority regarding the legal standard to determine whether services are necessary or beneficial to the estate. *Id.* at 107. We rejected a standard that services are only compensable if they result in a material benefit to the estate because this does not comport with the clear meaning of the statute. *Id.* at 108. Instead, a professional need demonstrate only that the services were reasonably likely to benefit the estate at the time rendered. *Id.*

■ In addition, a bankruptcy court examines the circumstances and manner in which services are performed and results achieved to determine a reasonable fee. *Id.* Such examination includes:

(a) Were the services authorized?

(b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?

(c) Are the services adequately documented?

(d) Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?

(e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

*Id.; see also In re Strand*, 375 F.3d at 860.

■ In exercising reasonable billing judgment, the professional must consider:

(a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

(b) To what extent will the estate suffer if the services are not rendered?

(c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*In re Mednet*, 251 B.R. at 108 n. 7, *citing to Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 959 (9th Cir.1991).

The bankruptcy court began its analysis by asking the fundamental question of

whether the services were compensable legal services. *In re Garcia,* 317 B.R. at 817–818. This essential question is part of the analysis of *Puget Sound Plywood,* 924 F.2d at 957–58.

■ The first part of the analysis asks "[a]re the 'services which are the subject of the application properly compensable as legal services' ". *Id.* at 957. "A finding of compensability merely means the services performed were properly charged as legal services, as opposed to administrative or otherwise nonlegal services." *Id.* at 958.

■ Determining what are compensable legal services is assisted by examining the relationship between trustee and counsel. Section 327 allows trustees to hire professionals to perform services requiring special expertise, beyond that expected of an ordinary trustee. Such professionals can be separately compensated for actual, necessary services under § 330(a). *Boldt v. U.S. Trustee (In re Jenkins),* 130 F.3d 1335, 1341 (9th Cir.1997); *see also In re McKenna,* 93 B.R. 238, 241–42 (Bankr. E.D.Cal.1988) (A trustee may employ professionals only for tasks that require special expertise beyond that expected of an ordinary trustee).

■ Section 328(b) provides that an attorney or accountant may not receive compensation for the performance of any trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant. *U.S. Trustee v. Boldt (In re Jenkins),* 188 B.R. 416, 420 (9th Cir. BAP 1995); *aff'd* 130 F.3d 1335 (9th Cir.1997).

In a case involving trustee's compensation, the applicant attempted to distinguish between attorneys who serve as trustee and non-attorney trustees. *Sousa v. Miguel (In re U.S. Trustee),* 32 F.3d 1370, 1373 (9th Cir.1994). The Court of Appeals observed:

In *In re McKenna,* 93 B.R. 238 (Bankr. E.D.Cal.1988), the court refused to award attorney's fees to an attorney trustee for services ordinarily performed by a trustee. The court held that a "trustee may not be paid an attorney's fee for any task that ordinarily would be performed by a competent trustee without assistance from counsel." *Id.* at 240. Discussing trustees who serve as their own counsel under 11 U.S.C. § 328(b), the court recognized Congressional intent that "the court [ ] differentiate between the trustee's services as trustee, and his services as trustee's counsel, and to fix compensation accordingly." *Id.* (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 328–29 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 39 (1978), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5825, 6285).

The Fourth Circuit limited the fees of an attorney in a similar case. In *United States Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp),* 930 F.2d 386 (4th Cir.1991), the Fourth Circuit refused to compensate a trustee's attorney who performed duties statutorily required of the trustee. The court stated that "courts may not compensate an attorney for services statutorily required by the trustee. Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties and only to the extent of matters requiring legal expertise." *Id.* at 388. Thus, attorney trustees may not charge attorney's fees when performing trustee duties and include overhead costs in their hourly rates.

*Id.* at 1373 (omitting footnote).

## 2. APPLICATION OF SECTION 330 STANDARDS

Mindful of this guidance, we must determine whether the bankruptcy court abused

its discretion in disallowing Appellant's total fee application. We consider the individual components of the work performed.

*A. Under the facts of this case, the Bankruptcy Court did not err in refusing to compensate counsel for preparing employment applications.*

▮ Appellant billed for services in preparing and filing the trustee's applications for employment of the firm and the real estate broker. The denial of fees for this work is not an abuse of discretion. Routine employment applications, "are generally prepared and presented by a trustee without the assistance of an attorney for the estate." *In re McKenna,* 93 B.R. at 241.

As to Appellant's employment application, the bankruptcy court observed:

> Unfortunately, after extensively reviewing the time sheets, and making the adjustments noted above, the Court finds that the remaining services relate to routine case administration services in Category "A" for Standard Bankruptcy Administration (approximately $128 remaining after taking deductions for disallowed time above); the firm's employment application which is listed under Category "B" Employment Applications; and its services related to the preparation of fee applications in Category "E" Fee Applications ($2,425). Since the vast majority of the firm's services were disallowed because they constituted the work of the trustee, the Court cannot justify allowing compensation for the remaining time under Standard Bankruptcy Administration, nor can the Court justify allowing compensation for services related to the firm's

employment application and preparation of the fee application.

*Garcia, supra* at 825–26.

▮ This panel may exercise discretion to examine the record provided. In doing so, we look for any plausible basis upon which the bankruptcy court might have exercised its discretion to do what it did. If we find any such basis, we affirm. *Sallie Mae Servicing, LP v. Williams (In re Williams),* 287 B.R. 787, 792 (9th Cir. BAP 2002).

[13] Again, preparation of an application for employment of a professional is a duty *generally* performed by a trustee without the assistance of an attorney. *In re McKenna,* 93 B.R. at 241 (emphasis added). This does not mean that preparation of an employment application is *per se* not compensable. It simply means, absent a showing by applicant to the contrary, routine employment applications remain a trustee duty.[5] As applied to counsel's employment application, the court's disallowance here is not an abuse of discretion.

*B. Under the facts of this case the Bankruptcy Court did not err in refusing to compensate counsel for work in connection with the sale of the San Marcos Property.*

[14] Appellant expended 29.7 hours and requested $5,676 for sale related services. *Garcia* at 820. In denying all fees, the court summarized the firm's legal services as: "reviewing the listing agreement; communicating with the broker; negotiating with debtors' attorney regarding the sale of equity to the debtors; reviewing the title report; and preparing the stipulation and mutual releases between the debtors and the trustee." *Id.*

---

5. For example, employment of special counsel pursuant to section 327(e) might involve more than a routine general counsel application.

The court noted "[t]here is also no satisfactory explanation as to why both Gary E. Slater and his paralegal needed to review the listing agreement and no description regarding the legal analysis of the issues involved." *Id.* at 820–21. Absent this detail, the court was not in a position to determine whether the fees incurred were compensable as legal services. This finding is not an abuse of discretion. Again, a case trustee may only employ professionals for tasks that require special expertise beyond that expected of an ordinary trustee. *In re Jenkins,* 188 B.R. at 420. Routine negotiations regarding sale of real property are properly within the trustee's province. *See In re McKenna, id.* at 242. *Also see In re Castro,* 320 B.R. 690, 696 (Bankr.S.D.Cal.2005).

Appellant is ultimately responsible for its own actions. *In re Strand,* 375 F.3d at 859. The court must take into consideration whether the professional exercised reasonable billing judgment. *Mednet,* 251 B.R. at 108, *Puget Sound Plywood,* 924 F.2d at 958. (observing that a bankruptcy professional is not free "to run up a tab without considering the maximum probable recovery").

▮▮▮▮ Employment of counsel to assist in the sale did not give counsel free rein to step into the trustee's shoes and undertake efforts statutorily assigned to the trustee.[6] Simply put, the court cannot compensate an attorney for performing the statutory duties of a trustee. *In re Castro,* 320 B.R. at 696.

The bankruptcy court also denied fees for the Firm's review of the title report, noting:

[T]he only explanation offered by the firm is that its "preliminary assessment indicated that the property might be subject to a 'wild' deed of trust." Supp. Br. 5:22:25. The firm, however, provides no additional facts regarding the so-called wild deed. Further, no sale of the property ever took place and the debtors simply bought the equity. With no apparent legal issues present, reviewing the title report is part of the trustee's duties. *McKenna,* 93 B.R. at 241 (citation omitted).

*Id.* at 821–22.

The bankruptcy court's decision in this regard is not an abuse of discretion. *See In re McKenna* 93 B.R. at 242 (reviewing title reports generally a duty of the trustee).

*C. The Bankruptcy Court erred in refusing any compensation to counsel for preparing legal papers involving a stipulation and mutual release between the trustee and debtors.*

The court ruled:

[T]he firm spent approximately 16.4 hours for a total of $3,155.50 on preparing the stipulation and mutual releases between the debtors and the trustee. The stipulation and order is a mere five pages, with one page consisting of signatures. *See* Stipulation and Order [Docket # 27]. The stipulation was quite simple and no releases were indicated within the stipulation. The Court accepted Mr. Slater's offer of proof at the September 30, 2004, hearing that the releases were prepared and signed.

**6.** Appellant argues that attorneys should be able to rely on court approval of an employment application to the extent the court initially approves the nature of the proposed services detailed in the application. *Appellant's Brief* at 21–23. Detail in the employment application is not a safe harbor or guarantee of compensable services, especially where the detail is included in counsel's declaration, rather than in the body of the application. Counsel should know the law: legal fees are subject to disallowance under section 330(a) for services duplicating work of a trustee. *See Garcia* at 815, fn. 1, section 328(b).

But, the releases were not included in the record, so the Court did not have the opportunity to examine how complex they might have been. The declaration of Gary E. Slater accompanying the order approving the stipulation consisted of one and one-half pages. *See* Declaration of Gary E. Slater in Support of Seeking Entry of Order Approving Stipulation Re Compromise and Liquidation of Debtors' Residence [Docket # 28]. Lastly, the Notice of Intended Action was simply a form with a few paragraphs typed in regarding the agreement between the trustee and the debtors. *See* Notice of Intended Action re Trustee and Debtors [Docket # 23].

*In light of the simplicity of the documents noted above, and the lack of evidence regarding the releases, the Court finds that the services relating to the stipulation and mutual releases are not compensable as legal work.*

*Garcia, supra* at 822. (emphasis supplied).

■■■ Preparation of legal documents, such as the agreement and releases here, are regarded as legal services. It is well settled in California that "practicing law" means more than just appearing in court. *Estate of Condon*, 65 Cal.App.4th 1138, 76 Cal.Rptr.2d 922 (1998). Under California law, the practice of law includes the preparation of legal instruments and contracts by which legal rights are secured, whether the matter is pending in court or not. *Frankfort Digital Services. Ltd. v. Neary (In re Reynoso)*, 315 B.R. 544, 552 (9th Cir.BAP2004)(layperson's solicitation of information which is translated into completed bankruptcy forms is unauthorized practice of law).

■■■ The fact that documents are not complex is not dispositive as to whether their drafting is properly within the sphere of legal services. Settled California law establishes that preparing legal documents that secure legal rights is normally considered practicing law. The bankruptcy court's conclusion is an abuse of discretion.

Possibly the court's determination that fees should not be awarded rests on more than a conclusion that appellant's preparation of documents did not constitute *compensable* legal services. The court noted it had not seen any evidence regarding the releases. Implicit in this ruling is that the simple documents drafted failed to justify fees of $3,155.50. This is buttressed by the court's observation that:

> Again, usually in these situations where a debtor purchases the equity in his or her residence in order to avoid losing it to a sale, the debtors' attorney would prepare the stipulation. Perhaps the trustee may hire an attorney to review the stipulation for legal issues, but that is not the situation in this case since the firm again simply took over all the work in the case.

*Garcia, supra* at 822.

Given that drafting legal papers is normally compensable as legal work, this matter is remanded to the bankruptcy court to enter explicit findings. If the court determines such work was necessary in this case, it can review the drafted documents and establish a reasonable fee for what was done.

*D. The Bankruptcy Court erred in refusing to award any fees for preparation of the firm's fee application.*

■■■ The rationale for requiring detailed fee statements is to enable the bankruptcy court to fulfill its obligation to examine carefully requested compensation to ensure expenses are justified. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir.1985). Section 330(a)(6) provides that any compensation awarded for preparation of a fee application must be reasonable in

light of the level and skill required to prepare it. Based on this record, disallowance of *all* fees for preparation of the fee application was an abuse of discretion. Fees sought for preparation of the application are not normally disproportionate to the full amount of fees sought. Nevertheless, there is ordinarily an estate cost in preparing such required pleadings, when compensable legal services have been rendered. This matter is remanded to the bankruptcy court to reconsider the compensation denial.

## CONCLUSION

An attorney employed by a trustee must be mindful that professional services are limited to tasks not routinely performed by a trustee. Appellant stepped into the shoes of the trustee, regarding aspects of the sale of the San Marcos Property and preparation of employment applications. The bankruptcy court correctly denied fees in those instances.

In an exhaustive, thoughtful memorandum decision, the bankruptcy court nevertheless went too far in denying all compensation to the Firm for preparing the stipulation and release solely because such were not compensable legal services. Indeed, these services should qualify for compensation, assuming they were necessary and the amount sought is reasonable. If the bankruptcy court decides any services should be compensated, the court must then allow reasonable compensation for the preparation and presentation of a fee application. We reverse on these issues only and remand for further consideration.