

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CPESAZ LIQUIDATING, INC., fka<br>Community Provider of Enrichment<br>Services, Inc.; NDS LIQUIDATING,<br>INC., fka Novelles Developmental<br>Services, Inc.; CPESCA LIQUIDATING,<br>INC., fka CPES California, Inc.,<br>　　　　　Debtors. | BAP No. CC-22-1090-FTL<br><br>Bk. No. 9:20-bk-10554-DS<br>Jointly Administered With:<br>Bk. No. 9:20-bk-10553-DS<br>Bk. No. 9:20-bk-10994-DS |
| ROBERT BENNETTI; LINDA<br>MARIANO; LINKI PEDDY; CHARLES<br>FOUST, JR.,<br>　　　　　Appellants,<br>v.<br>OXFORD RESTRUCTURING<br>ADVISORS LLC; FAEGRE DRINKER<br>BIDDLE & REATH LLP; UST- UNITED<br>STATES TRUSTEE, SANTA BARBARA,<br>　　　　　Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Deborah J. Saltzman, Bankruptcy Judge, Presiding

Before: FARIS, TAYLOR, and LAFFERTY, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Appellants Robert Bennetti, Linda Mariano, Linki Peddy, and Charles Foust, Jr. (the "ESOP Participants")[1] are participants in an employee stock ownership plan set up by their former employers, chapter 11[2] debtors CPESAZ Liquidating, Inc., NDS Liquidating, Inc., and CPESCA Liquidating, Inc. (the "Debtors"). They appeal the bankruptcy court's award of over $2 million in fees and costs to the Debtors' law firm, Faegre Drinker Biddle & Reath LLP ("Faegre"). They assert that Faegre failed to disclose a disqualifying conflict of interest and sought to recover for excessive, vague, or impermissible work.

The ESOP Participants rely on the wrong standard of review: they ask us to review the billing records de novo and overturn the bankruptcy court's findings. Rather, the abuse of discretion standard applies and does not permit us to replace the bankruptcy court's views of the facts or its discretionary decision with our own. The bankruptcy court identified the correct legal standard and made factual findings that are logical, plausible, and supported by the record. Its decision was well within the bounds of its

---

[1] The ESOP Participants purport to include the individual named parties as well as "ninety-two other participants in the Community Provider of Enrichment Services, Inc. Employee Stock Ownership Plan and Trust." Neither the notice of appeal nor the ESOP Participants' briefs identify these ninety-two individuals. We express no opinion on the question whether one may prosecute an appeal on behalf of unnamed appellants.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

discretion. We AFFIRM.

## FACTS

### A.    The chapter 11 case

The Debtors[3] provided behavioral health services in California and Arizona. Their outstanding shares were held in the employee stock ownership plan ("ESOP") maintained by Community Providers of Enrichment Services, Inc. ("CPES") for the benefit of their employees.

Faegre advised the Debtors prepetition regarding potential sale and restructuring options. Around this time, the Debtors were looking for a replacement trustee of the CPES ESOP. The Faegre partner in charge of the engagement suggested Miguel Paredes of Prudent Fiduciary Services and facilitated an interview. Faegre had a lengthy preexisting relationship with Mr. Paredes and had represented him in dozens of other unrelated ESOP cases. Shortly before the petition date, the Debtors' board appointed Mr. Paredes to serve as trustee for the CPES ESOP.

In April 2020, with the assistance of Faegre, CPESAZ Liquidating, Inc. and NDS Liquidating, Inc. filed chapter 11 petitions; CPESCA Liquidating, Inc. filed its own petition a few months later.

The bankruptcy court approved the Debtors' application to employ

---

[3] When they filed their chapter 11 petitions, CPESAZ Liquidating, Inc. was known as Community Providers of Enrichment Services, Inc.; NDS Liquidating, Inc. was known as Novelles Developmental Services, Inc.; and CPESCA Liquidating, Inc. was known as CPES California, Inc. We will refer to the Debtors by their new names throughout this memorandum.

Faegre as general bankruptcy counsel. Faegre did not disclose in its application its relationship with Mr. Paredes or that it had represented him in unrelated ESOP matters.

Faegre later had Mr. Paredes and the Debtors' CEO sign a conflicts waiver pursuant to firm policy. The Debtors did not seek bankruptcy court approval for the post-petition waiver, and Faegre did not disclose the conflicts waiver to the bankruptcy court until much later.

In November 2020, the bankruptcy court approved the sale of substantially all of the Debtors' assets.

The Debtors proposed a joint chapter 11 plan of liquidation and disclosure statement. The plan proposed to liquidate the Debtors, which would result in a 100% payout to unsecured creditors and a surplus for stockholders, including the ESOP. Mr. Paredes, as trustee of the CPES ESOP, approved the plan. The bankruptcy court confirmed the plan over the ESOP Participants' objection.

The ESOP Participants appealed the confirmation order and raised many of the same arguments presented in this appeal. We affirmed, rejecting their argument that the plan was "tainted by conflict" and holding that they "did not produce evidence sufficient to support a finding of mismanagement, conflict, or any other ground for relief." The Panel denied the ESOP Participants' motion for reconsideration. The ESOP Participants appealed the Panel's ruling to the Ninth Circuit.

4

**B.    The first fee application**

Meanwhile, Faegre filed an interim fee application ("First Fee Application") seeking $1,376,120 in fees and $8,606.93 in costs. The U.S. Trustee identified objectionable billing entries. Ultimately, Faegre agreed to reduce its fees by $30,461.70.

After a hearing, the bankruptcy court approved the First Fee Application (including the voluntary reduction) over the ESOP Participants' objection but imposed a twenty-percent holdback. In other words, the court allowed $1,076,526.64 in fees, held back $269,131.66 subject to a final fee application, and awarded $8,606.93 in costs.

**C.    The second fee application**

After the court confirmed the plan, Faegre filed its second and final fee application ("Final Fee Application"). It sought an additional $1,381,828 in fees and $9,861.82 in costs, plus the amount held back from the First Fee Application.

The ESOP Participants again objected, arguing that: (1) Faegre did not exercise billing judgment; (2) time entries were block-billed;[4] (3) time entries used impermissible "attention to," "attend," and "work on"; (4) time entries reflected clerical or ministerial work; (5) time spent researching local rules was impermissible; (6) travel and wait times were

---

[4] "Block billing" is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation omitted).

impermissible; (7) time spent answering the ESOP Participants' questions was impermissible; and (8) time spent on unsuccessful or incomplete tasks was impermissible. They urged the bankruptcy court not to release the holdback from the First Fee Application because Faegre had done nothing to correct the problems in its time entries.

In addition, the ESOP Participants argued that Faegre's failure to disclose that it represented Mr. Paredes in other ESOP matters violated Rule 2014 and Local Bankruptcy Rule 2014-1, and its representation of the Debtors was a conflict of interest. They said that Mr. Paredes owed them a fiduciary duty and duty of loyalty, but he breached those duties by acting for the benefit of Faegre and the Debtors. They urged the court to modify the terms of Faegre's compensation.

Faegre responded that its billed time was reasonable and compensable and addressed the alleged problems with the billing records. Additionally, it represented that it had reached a settlement agreement with the U.S. Trustee and the liquidating trustee for the CPES ESOP to reduce its request by $120,000 to settle issues relating to the failure to disclose.

## D. The ESOP Participants' motion to disqualify Faegre

While the Final Fee Application was pending, the ESOP Participants filed a motion to disqualify Faegre from representing the Debtors ("Motion to Disqualify"), largely repeating the same concerns about Faegre's representation of Mr. Paredes. They urged the bankruptcy court to

6

disqualify Faegre from representing the Debtors and disgorge all fees.

Faegre responded by arguing that it had no duty to disclose its representation of Mr. Paredes, because it only represented him in his capacity as an ESOP trustee, not in his individual capacity. It insisted that there was no conflict of interest, but it stated that it had obtained a signed conflicts waiver from Mr. Paredes and the Debtors' CEO. Nevertheless, it acknowledged that it did not run a firm-wide conflict check on Mr. Paredes' name or his firm's name.

The bankruptcy court requested that the U.S. Trustee investigate the allegations in the Final Fee Application and Motion to Disqualify. In response to the court's request, the U.S. Trustee asserted that Faegre should have disclosed its representation of Mr. Paredes as an ESOP trustee in the unrelated ESOP cases. He concluded that such failure did not warrant disqualification but stated that Faegre should supplement its Rule 2014 disclosure so that he could determine if Faegre was disinterested.

Neither Faegre nor the ESOP Participants were happy with the U.S. Trustee's view. Faegre maintained that it was not required to disclose its representation of Mr. Paredes in other cases. The ESOP Participants argued that the U.S. Trustee's analysis was flawed and unsupported.

The bankruptcy court granted the U.S. Trustee more time to investigate allegations raised by both parties in their responses. The U.S. Trustee filed a lengthy analysis concluding that Faegre was disinterested and did not represent interests adverse to the Debtors' estates. He did not

support disqualification of Faegre. Rather, he reported that Faegre was agreeable to a $120,000 sanction for its noncompliance with Rule 2014.

E.     **The bankruptcy court's rulings**

After a hearing, the bankruptcy court rendered an oral ruling on the Final Fee Application and the Motion to Disqualify. As to the Motion to Disqualify, the bankruptcy court held that Faegre did not properly conduct a conflict check and violated Rule 2014 by failing to disclose its representation of Mr. Paredes. It agreed with the U.S. Trustee that a $120,000 reduction in fees was appropriate as a sanction for violation of Rule 2014.

Despite the rule violation, the bankruptcy court held that Faegre's representation of Mr. Paredes was not a conflict of interest, was not adverse to the Debtors' estates' interests, and did not suggest a lack of disinterestedness. It said that the ESOP Participants raised a "lot of speculation" and read too much into "practices that are fairly common." It also found "no evidence of a conspiracy of any improper behavior among any of the professionals who were working in this case. . . . [T]here were . . . counsel who performed their professional obligations appropriately and counsel who met the requirements . . . under the Bankruptcy Code." Accordingly, it considered the range of appropriate remedies and held that disqualification was not warranted.

The bankruptcy court turned to the Final Fee Application. First, it disagreed with the ESOP Participants' analysis that certain types of work

8

could be discounted as a whole.

Second, it agreed in part with the ESOP Participants that some time entries contained inadequate descriptions. It said that it could not "make a real meaningful assessment about what the services were or whether they were actual, reasonable, beneficial to the estate" and deducted $70,000.

Third, the bankruptcy court found that Faegre's billing records contained instances of block billing. It reduced the award by $56,000.

Fourth, the court deducted $1,500 for double billing of expenses.

Thus, in addition to the $120,000 sanction for the Rule 2014 violation, the court deducted another $126,500.[5]

Finally, the bankruptcy court addressed the twenty-percent holdback from the First Fee Application. It authorized payment of half of the holdback and explained that "repeated inadequate applications just make it impossible for [the court] to approve payment of the full amount here."

The bankruptcy court entered an order granting in part and denying in part the Motion to Disqualify. It denied the request to disqualify Faegre but granted the request for sanctions and deducted $120,000 from the Final Fee Application.

The court issued a separate order granting the Final Fee Application. It noted the $120,000 sanction for violation of Rule 2014, the $125,000

---

[5] The bankruptcy court made a mistake in its final calculation: although the total of its deductions was $127,500, it reduced the award by $126,500. However, neither party has raised this issue on appeal, so we will not adjust the bankruptcy court's calculation.

reduction for vague descriptions and block billing, the $1,500 reduction for duplicative expenses, and the $134,565.83 disallowance (half of the twenty-percent holdback). Thus, Faegre was entitled to an additional $1,271,393.83 in fees and $8,361.82 in costs from the Final Fee Application.

In sum, Faegre requested fees totaling $2,757,948. The bankruptcy court did not disqualify Faegre but allowed fees totaling $2,347,920.47. This is a reduction of $410,027.54, or approximately fifteen percent. The ESOP Participants timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in granting the Final Fee Application and awarding Faegre its fees and costs subject to stated reductions and sanctions.

## STANDARD OF REVIEW

The ESOP Participants correctly state that the standard of review is abuse of discretion; nevertheless, they urge us to review the bankruptcy court's orders de novo and exercise our discretion to reduce the fee award. Conversely, Faegre and the U.S. Trustee argue that we must apply the more deferential abuse-of-discretion standard.

The bankruptcy court has broad discretion in determining an award of attorneys' fees. This discretion particularly applies to its evaluation of

10

and factual determinations concerning the reasonableness and appropriateness of an award. *See Fry v. Dinan (In re Dinan)*, 448 B.R. 775, 788 (9th Cir. BAP 2011) ("We are mindful that the bankruptcy court has broad discretion in determining whether to award attorney's fees."). As such, "[w]e do not disturb a bankruptcy court's award of attorneys' fees, unless the court abused its discretion or erroneously applied the law." *Ferrette & Slater v. U.S. Tr. (In re Garcia)*, 335 B.R. 717, 723 (9th Cir. BAP 2005); *see also Fear v. U.S. Tr. (In re Ruiz)*, 541 B.R. 892, 896 (9th Cir. BAP 2015) ("We review for abuse of discretion the bankruptcy court's award of fees under § 330(a)."). [6]

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

---

[6] We acknowledge that the legal standard "to determine the allowance of fees involves statutory interpretation and construction of 11 U.S.C. § 330(a) and is therefore reviewed de novo." *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 106 (9th Cir. BAP 2000) (footnote omitted). But there is no dispute about the correct legal standard, so we do not employ de novo review.

## DISCUSSION

**A.  The bankruptcy court did not abuse its discretion in evaluating the billing entries and awarding Faegre its fees and costs.**

The ESOP Participants argue that the bankruptcy court erred in its evaluation of Faegre's billing entries and should have deducted much more from its fee award. We hold that the bankruptcy court properly exercised its discretion in approving fees for Faegre's work.

Section 327 permits the trustee (or debtor-in-possession) to employ professionals such as attorneys. After notice and a hearing, the bankruptcy court may award those professionals "reasonable compensation for actual, necessary services rendered by the . . . attorney . . . and . . . reimbursement for actual, necessary expenses." § 330(a)(1). Section 330(a)(3) provides guidance for the court's evaluation:

> In determining the amount of reasonable compensation to be awarded . . . , the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the

12

complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The bankruptcy court may "award compensation that is less than the amount of compensation that is requested." § 330(a)(2). Additionally, the court cannot award compensation for "unnecessary duplication of services" or "services that were not . . . reasonably likely to benefit the debtor's estate[ ] or . . . necessary to the administration of the case." § 330(a)(4)(A).[7]

An inquiry into the reasonableness of compensation should consider the "circumstances and the manner in which services are performed and the results achieved . . . ." *In re Mednet*, 251 B.R. at 108.

Such examination, in general, should include the

---

[7] We have summarized these statutes as follows:

Section 330(a)(1) authorizes "reasonable compensation for actual, necessary services rendered" by a professional. Section 330(a)(2) authorizes a court to award compensation that is less than the amount of compensation requested. Section 330(a)(3)(A) outlines factors a court should consider when determining what is reasonable compensation for services rendered. In addition, § 330(a)(4)(A) outlines when compensation should not be allowed.

*In re Mednet*, 251 B.R. at 106 (footnotes omitted).

following questions: First, were the services authorized? Second, were the services necessary or beneficial to the administration of the estate at the time they were rendered? Third, are the services adequately documented? Fourth, are the fees requested reasonable, taking into consideration the factors set forth in § 330(a)(3)? Finally, in making this determination, the court must take into consideration whether the professional exercised reasonable billing judgment. [W]hen a cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals, the service is unwarranted and a court does not abuse its discretion in denying fees for those services.

*Id.* at 108-09 (cleaned up).

### 1. Reasonableness of the award

The ESOP Participants raise arguments that have little to do with the Faegre fees. For example, they argue that it was suspicious that the Debtors filed their petitions in California, rather than Arizona, and that there should have been a creditors' committee to "counter-balance" the Debtors and Faegre. The ESOP Participants do not explain how these contentions would justify denial or reduction of Faegre's fees after the court had already confirmed a plan and decided (at least implicitly) that the Debtors conducted their cases properly. Further, we already rejected these arguments in the ESOP Participants' prior appeal.

### 2. Reasonableness and necessity of time expended

The ESOP Participants argue that the billed fees and expenses were not reasonable or necessary. But they merely offer questions and conjecture

14

about Faegre's motives and self-interestedness without any citation to supporting evidence in the record. They also fail to provide us with a proposed reduction that they consider reasonable, instead asking us to review the time records ourselves and award something less than the bankruptcy court did.

The ESOP Participants misconceive the Panel's role. An appeal governed by the abuse of discretion standard is not a "do-over." Rather, our job is to determine whether the bankruptcy court's findings regarding the reasonableness and necessity of Faegre's work were illogical, implausible, or without support in the record.[8] We hold that the bankruptcy court's findings easily meet that standard.

### 3. Specific findings

The ESOP Participants complain that the bankruptcy court "failed to provide . . . sufficient basis on which to ascertain the specific reasons" for its decision and offered only "a mere generalization." The ESOP Participants are wrong.

"When the [bankruptcy] court makes its award [of attorneys' fees], it must explain how it came up with the amount. The explanation need not be elaborate, but it must be comprehensible. . . . [T]he explanation must be

---

[8] At oral argument, counsel for the ESOP Participants asked the Panel to spend five or ten minutes reviewing the billing statements. While we are not reviewing the bankruptcy court's findings de novo, we can assure counsel that we spent much more than five or ten minutes reviewing those statements.

'concise but **clear**.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citation omitted).

Here, the bankruptcy court did just that: it carefully reviewed the billing records and offered an understandable and comprehensive explanation of its various reductions. In particular, it stated that it was unable to evaluate the work performed due to vague or inadequate descriptions or block billing that was valued at $126,000; identified duplicative expenses totaling $1,500; and highlighted other problems that Faegre had not remedied and deducted an additional $134,565.83. Contrary to the ESOP Participants' argument, the bankruptcy court did not need to "show its work" or go line-by-line down Faegre's billing records.[9] Its explanation was concise and sufficiently clear.

### 4. Billing entries

The ESOP Participants offer no fewer than eleven alleged problems with Faegre's billing records that they say warrant full or partial reduction in fees. None of these points suggest reversible error.

### a. Billing judgment

The ESOP Participants argue that Faegre did not exercise any billing judgment. "Billing judgment" requires that an attorney must "consider the

---

[9] At oral argument, the ESOP Participants took the position that Local Bankruptcy Rule 2016-1 requires that the bankruptcy court provide a "detailed explanation" and address each "line item." But the rule is applicable to litigants' fee applications and does not impose any such requirement on the bankruptcy court's findings.

potential for recovery and balance the effort required against the results that might be achieved." *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 961 (9th Cir. 1991).[10]

The ESOP Participants fail to show that Faegre did not exercise billing judgment. Other than complaining about the number of attorneys and professional staff working on the case, the hourly billing rates, and Faegre's apparent failure to reduce their bills, the ESOP Participants do not point to any particular lapse in judgment that would warrant further reduction or disgorgement. We also note that these bankruptcy cases were unusually successful: few chapter 11 cases result in full payment of all creditors and a surplus for stockholders. The bankruptcy court – which was undoubtedly more familiar than this Panel with the demands of the case – was satisfied with Faegre's billing judgment, and we will not second-guess its finding.

---

[10] The Ninth Circuit has stated that a professional should consider:

(a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

(b) To what extent will the estate suffer if the services are not rendered?

(c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Puget Sound Plywood, Inc.*, 924 F.2d at 959.

### b.    Block billing and vague entries

The ESOP Participants contend that there were many instances of impermissible block billing totaling over $280,000. We have stated that "lumping prevents the bankruptcy court from determining whether individual tasks were expeditiously performed within a reasonable amount of time." *In re Stewart*, BAP No. CC-07-1328-MoDMk, 2008 WL 8462960, at *6 (9th BAP Cir. Mar. 14, 2008), *aff'd*, 334 F. App'x 854 (9th Cir. 2009). "When fee applications are submitted with a portion or all of the requested fees based on lumped entries, courts may reduce, rather than disallow, compensation." *Thomas v. Namba (In re Thomas)*, BAP No. CC-08-1307-HMoPa, 2009 WL 7751299, at *6 (9th Cir. BAP July 6, 2009), *aff'd*, 474 F. App'x 500 (9th Cir. 2012).

The ESOP Participants also argue that the billing entries contained vague descriptions involving "attention to," "attend," and "work on," all of which accounted for nearly $350,000 of fees. As a general rule, "[b]illing entries must provide the Court sufficient detail to evaluate what work was performed." *Godwin v. World Healing Ctr. Church, Inc.*, Case No. 8:21-cv-00555-JLS-DFM, 2021 WL 6618801, at *4 (C.D. Cal. Oct. 20, 2021).

The bankruptcy court closely reviewed the billing entries and spent a considerable amount of time examining the issues and evidence. It flagged the block-billing issue in connection with both the First Fee Application and the Final Fee Application, found that block-billed entries prevented it from being able to evaluate work totaling $56,000, and deducted that

18

amount. It also determined that vague entries and inadequate descriptions justified a $70,000 reduction. The bankruptcy court carefully considered in the first instance the billing entries and work done in this case, and its findings are not illogical, implausible, or unsupported by the record.

Moreover, in addition to the specific amounts flagged by the court for block billing and vague descriptions, the court exercised its discretion and further reduced fees by $134,565.83 for Faegre's "shortcomings" and sloppy billing practices. Thus, it is clear that the bankruptcy court did not ignore or minimize these issues; in fact, the court imposed a significant reduction in fees. It did not abuse its broad discretion.

### c. Impermissible tasks

The ESOP Participants highlight types of billed tasks that the court should have disallowed: clerical, ministerial, or administrative tasks; research regarding local rules; travel and wait time; work done in response to the ESOP Participants' inquiries; work correcting Faegre's own mistakes; "failures" concerning state agencies; and work on matters never finished or filed. The premise underlying the ESOP Participants' arguments is that Faegre should not have done these tasks. We defer to the bankruptcy court's factual findings that this work was actually performed and necessary. *See In re Garcia*, 335 B.R. at 724 (In *Mednet*, "[w]e rejected a standard that services are only compensable if they result in a material benefit to the estate because this does not comport with the clear meaning of the statute. Instead, a professional need demonstrate only that the

19

services were reasonably likely to benefit the estate at the time rendered." (citation omitted)); *id.* at 728 ("The fact that documents are not complex is not dispositive as to whether their drafting is properly within the sphere of legal services. Settled California law establishes that preparing legal documents that secure legal rights is normally considered practicing law."); *Rodriguez v. Cnty. of L.A.*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014) ("Reasonable travel time by the attorney is compensable, at full rates, if that is the practice in the community. . . . In Los Angeles, the practice is to compensate at full rates for travel time . . . ."), *aff'd*, 891 F.3d 776 (9th Cir. 2018). The bankruptcy court carefully reviewed the time entries and determined that the work was actually performed and necessary; it did not abuse its discretion.

## B. The ESOP Participants' arguments regarding Faegre's alleged conflict of interest or failure to disclose are unpersuasive.

The ESOP Participants complain repeatedly that Faegre was not disinterested. They contend that Faegre's preexisting relationship with Mr. Paredes warrants denial of all fees or a larger fee reduction than the bankruptcy court selected. We again disagree.

First, the ESOP Participants' counsel conceded at oral argument that they are not currently appealing issues concerning the alleged conflict of interest, including the propriety of the $120,000 sanction or Mr. Paredes' alleged conflict. This concession is appropriate because we have already rejected similar arguments in the ESOP Participants' earlier appeal to the

BAP. We held that the ESOP Participants "did not produce evidence sufficient to support a finding of mismanagement, conflict, or any other ground for relief." The ESOP Participants cannot relitigate the same issues under the guise of an appeal from a fee award.

Second, the sanction was appropriate to remedy the Rule 2014 violation. We agree with the ESOP Participants and the bankruptcy court that Faegre violated Rule 2014 when it failed to disclose its connections with Mr. Paredes. That rule provides that an application to retain a professional person "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." The word "connections" must be read broadly because "attorneys engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration." *Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 462 (5th Cir. 2012) (cleaned up). For disclosure purposes, the question is not whether the attorney faces a disqualifying conflict of interest or lack of disinterestedness; rather, the question is what information the attorney must provide so the court and other parties in interest can decide for themselves whether the attorney

21

should be retained.

Faegre should have disclosed its "connections" with Mr. Paredes. The existence of a long-standing business relationship is a fact that the court and the parties would want to consider in evaluating the Debtors' application to retain Faegre. We are surprised that Faegre thought it was advisable to request conflicts waiver letters from the Debtors and Mr. Paredes but did not think that it was necessary to disclose the relationship, let alone the signed conflicts waivers, to the court and the other parties.

The "failure to comply with the disclosure rules [Rules 2014 and 2016] is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 880 (9th Cir. 1995). "The disclosure rules are applied literally, even if the results are sometimes harsh. Negligent or inadvertent omissions do not vitiate the failure to disclose. Similarly, a disclosure violation may result in sanctions regardless of actual harm to the estate." *Id.* at 881 (cleaned up). The bankruptcy court has discretion to reduce a fee award for "failure to disclose fully relevant information" in its Rule 2014 disclosure. *Id.* at 882.

The bankruptcy court correctly determined that Faegre had failed to comply with Rule 2014. As a result, it sanctioned Faegre $120,000 but held that disqualification was not appropriate. It rejected the ESOP Participants'

22

"speculation," which was rife with conspiracies involving "practices that are fairly common." Because the court's decision was not illogical, implausible, or unsupported by the record, it was not an abuse of discretion to deny the Motion to Disqualify and impose a monetary sanction as punishment for the failure to comply with Rule 2014.

## CONCLUSION

The bankruptcy court did not abuse its discretion in its award of fees and costs to Faegre or its refusal to disqualify Faegre. We AFFIRM.