NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-11-1483-MkHTa |
| ) | |
| CHARLENE GRUNTZ, ) | Bk. No.   RS 08-18585-MJ |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| ROBERT GRUNTZ, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM***|
| ) | |
| P.J. ZIMMERMAN, Chapter 7 ) | |
| Trustee; UNITED STATES TRUSTEE,) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on September 21, 2012
at Pasadena, California

Filed – October 15, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Meredith A. Jury, Bankruptcy Judge, Presiding

_____

Appearances:   Appellant Robert Gruntz argued on his own behalf;
               Appellee P.J. Zimmerman argued on her own behalf.

_____

Before:  MARKELL, HOLLOWELL and TAYLOR,** Bankruptcy Judges.

_____

*This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**Hon. Laura S. Taylor, United States Bankruptcy Judge for the Southern District of California, sitting by designation.

**INTRODUCTION**

Robert Gruntz ("Robert")[1] appeals from an order granting the motion of chapter 7 trustee P.J. Zimmerman ("Trustee") to compensate her duly-employed field agent Jack Pope ("Pope"). Robert also appeals from an order denying a motion for reconsideration of the compensation order. We AFFIRM both orders.

**FACTS**[2]

This appeal arises from the bankruptcy case of Robert's former wife Charlene Gruntz ("Charlene"). Robert and Charlene filed for divorce in 2004. Charlene filed her chapter 7[3] bankruptcy case on July 14, 2008, and the Trustee was appointed to serve as chapter 7 trustee. At the time of Charlene's bankruptcy filing, Robert's and Charlene's divorce proceedings were still pending. Robert has admitted that no final property division had been made as of that time.

---

[1]Because some of the key players in this appeal share the same surname, we refer to them by their first name for ease of reference. No disrespect is intended.

[2]Some of the facts we rely upon are drawn from documents that the parties have provided to us in their excerpts of record. But many other facts are drawn from the bankruptcy court's electronic docket and the imaged documents attached thereto. We may take judicial notice of the filing and contents of these items. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003) (citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)).

[3]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

In her Schedules, Charlene claimed ownership of three parcels of real property: (1) a ranch located on Kirby Street in San Jacinto, California ("Kirby Ranch"), (2) a residence located on Eaton Avenue in Hemet, California ("Eaton Residence"), and (3) a residence located on Jeffrey Circle in Hemet, California ("Jeffrey Circle Residence").

Charlene's schedules suggested that each parcel might have some value to the estate, but ultimately the Trustee determined that each parcel was burdensome or of no value to the estate. Accordingly, she obtained authorization to abandon them.

Even though the Trustee no longer claims any interest in these three parcels, the bankruptcy estate's previously-claimed interest in two of these three parcels – the Kirby Ranch and the Jeffrey Circle Residence – is central to our resolution of this appeal. We will discuss each of these two parcels in turn.

**1. Kirby Ranch**

Shortly after Charlene's bankruptcy filing, in August 2008, the Trustee filed an emergency motion in the bankruptcy court seeking authorization to take immediate action concerning the Kirby Ranch. As set forth in the emergency motion, the Trustee and her associates had conducted a preliminary investigation of the Kirby Ranch, which revealed the following:

• Charlene was the title holder of record of the Kirby Ranch;

• Nothing in Charlene's Schedules or in her Statement of Financial Affairs indicated that she was at the time running any business located on the Kirby Ranch;

• A physical inspection of the Kirby Ranch indicated that someone was boarding roughly eighty horses on the property;

3

- A woman at the property claimed that she and her husband managed a horse boarding business on the property for someone by the name of "Bob";

- The physical inspection also suggested that there was insufficient food and shelter on the premises for eighty horses;

- In the pending state court dissolution proceeding between Charlene and Robert, a receiver by the name of Steven Speier ("Speier") had been appointed to take possession of the Kirby Ranch;

- Speier advised the Trustee that he also was aware of the horses being boarded on the property but did not know who owned the horses or who was running the business located on the Kirby Ranch;

- Speier also advised the Trustee that he had not collected any income that might have been generated from the horse boarding business;

- The physical condition of the Kirby Ranch was poor, with large amounts of garbage and old motor vehicles covering a significant portion of the property; and

- No one had stepped forward with either proof of insurance or claiming ownership of the business.

Based on these circumstances, the Trustee sought court approval to take immediate possession and control of the Kirby Ranch, to immediately terminate all business operations taking place on the property, and to return all horses to their owners.

A hearing was set on the emergency motion, and the Trustee gave notice of the hearing and the motion to, among others,

4

Robert and two lawyers who represented Robert in other matters.[4] No opposition was ever filed in response to the emergency motion, and it was ultimately granted.

Neither Robert nor anyone else ever sought any relief from the order granting the emergency motion. Notably, the order granting the emergency motion identified the Kirby Ranch as property of Charlene's bankruptcy estate. There is no indication in the record provided, or in our independent review of the bankruptcy case docket, that anyone attempted to dispute the identification of the Kirby Ranch as estate property at or around the time of the emergency motion.

In October 2008, the Trustee sought and obtained the court's permission to employ Pope as her field agent to provide services on behalf of the bankruptcy estate concerning the Kirby Ranch. In the employment application, the Trustee stated that, prior to filing the employment application, Pope had secured the property for the Trustee, and had arranged for the return of all of the horses formerly being boarded on the property.[5] The Trustee further stated that she needed to employ Pope because his future services might be needed to secure, supervise and clean up the

---

[4]The proofs and declarations of service filed in conjunction with the emergency motion indicate that Robert and his state court counsel Geoff S. Morris ("Morris") were each served with notice. A lawyer by the name of Lazaro E. Fernandez ("Fernandez") also was served. Fernandez had appeared in the bankruptcy case on behalf of Robert in July 2008. The entered order granting the emergency motion also was served on the same three people.

[5]According to the Trustee, nearly all of the horses were claimed by and turned over to Robert.

5

Kirby Ranch. The Trustee asserted: "The Kirby Property (in particular) contains a staggering quantity of garbage on the premises." Employment Application (Oct 2, 2008) at 2:22.

Like the August 2008 emergency motion, the Trustee's employment application once again refers to the Kirby Ranch as estate property. And once again, neither Robert nor anyone else objected to the employment application.[6] It was thus granted. No one has since sought relief from the order granting the employment application.

In the numerous filings in Charlene's case, Robert has made a number of statements in in which he claims the he and Charlene own or owned the Kirby Ranch as community property. The statements contained in a motion he filed in the bankruptcy court in December 2008 are representative. In that motion, Robert's counsel stated on his behalf: "Robert Gruntz has always maintained that the 'Kirby Property' is community property as well as several other properties in the name(s) of Robert Gruntz and/or Charlene Gruntz." Notice of Motion and Motion of Robert Gruntz for reconsideration, etc. (Dec. 1, 2008) at 3:14-16. In the same motion, his counsel also states: "Mr. Johnson [Trustee's counsel] is correct the 'Kirby Property' is community property and therefore is liable for community debts." Id. at 6:11-12. From these statements it is obvious that it apparently served Robert's interests at the time to assert that he and Charlene

_____

[6]Both the employment application and the entered order granting the employment application were served on Morris and Fernandez. However, unlike the emergency motion, the Trustee did not separately serve on Robert the employment application and the employment order.

6

jointly owned the Kirby Ranch as community property.

At other times, however, Robert has filed papers with the bankruptcy court alluding to the claims of others that, if proven, would establish that neither he nor Charlene own the Kirby Ranch.[7]  These third-party ownership claims were the subject of an adversary proceeding commenced in May 2009 and dismissed without prejudice in October 2009.

While Robert now points to myriad disputes and settlements involving numerous parties potentially calling into doubt the estate's formerly-claimed interest in the Kirby Ranch, we reiterate that no one ever sought either to oppose or to obtain relief from the two orders which authorized the Trustee to act and to employ a field agent in order to safeguard and maintain the Kirby Ranch, a parcel that the Trustee had reason to believe at the time: (1) was valuable property of the estate, and (2) needed to be secured and maintained in order to reduce the risk of liability to the estate.

**2.  Jeffrey Circle Residence, and the rents derived therefrom**

According to the Trustee, while being examined at her § 341(a) meeting of creditors, Charlene disclosed that she had lived in the Jeffrey Circle Residence until 2007.  Charlene apparently further disclosed at her § 341(a) meeting that she had been renting the property since 2007 and that she was delinquent on both mortgage payments and taxes owed on the property.

In April 2009, Downey Savings and Loan Association

---

[7]For her part, Charlene has claimed that she owns 100% of the Kirby Ranch, as her separate property.

7

("Downey"), the holder of the first deed of trust against the Jeffrey Circle Residence, sought and obtained relief from the automatic stay so that it could proceed with a foreclosure of the Jeffrey Circle Residence. Downey also claimed that it was entitled to the rents the Trustee had collected pursuant to the terms of its deed of trust and an accompanying rental property rider.

The Trustee filed a response in which she stated that she had reached an agreement with Downey in which she consented to its relief from stay motion, and agreed to abandon the estate's interest in the property. In return, Downey agreed to let the Trustee keep the roughly $12,200 in rents that the Trustee had collected from Charlene and the tenants renting the property.

The bankruptcy court entered orders in May 2009 granting Downey's relief from stay motion and authorizing the Trustee to abandon the Jeffrey Circle Residence. Robert's counsel was served with notice of the relief from stay motion, the Trustee's response thereto and the Trustee's abandonment notice. Robert never objected to or sought relief from any of these matters.

**3. Compensation Motion**

On May 6, 2011, the Trustee filed her motion for authorization to compensate Pope for his services in connection with the safeguarding and maintaining of the Kirby Ranch. Although Pope claimed roughly $45,000 in aggregate for his services and expenses incurred while acting as the Trustee's field agent, the only funds the estate had on hand to pay compensation was the roughly $12,200 (plus accrued interest) that the Trustee had collected in rents from the Jeffrey Circle

8

Residence. Accordingly, Pope indicated his willingness to accept that amount in full satisfaction for his services and expenses. Moreover, the Trustee indicated in the compensation motion that her other duly-employed professionals, her accountant and her attorney, were willing to forego any compensation in light of the insufficient funds in the estate and in light of the Trustee's desire to use the funds to cover at least some of Pope's out-of-pocket expenses.

In addition to his efforts to initially secure the Kirby Ranch and to ensure that the horses were transferred off the property, Pope also needed to board up three buildings, cut weeds and remove a "staggering amount of trash on the 20 acres" as required by the Trustee's insurance carrier and various city and county government offices. It is not clear from the compensation motion or Pope's accompanying declaration precisely when particular services were rendered or expenses incurred, but Pope claimed, among other things, out-of-pocket expenses of over $22,000 for dump fees and for bobcat and truck rental.

The Trustee further stated in the compensation motion that, at one point she had a prospective purchaser interested in buying the Kirby Ranch, but that ongoing disputes regarding ownership of the property and ongoing County demands that the property be further maintained prevented her from realizing any value from the property and forced her to abandon the estate's interest in the property.

Robert filed an opposition to the compensation motion on May 23, 2011. Among other things, Robert claimed: (1) the Trustee and the court were told at the outset of the case that

9

Charlene did not own the Kirby Ranch;[8] (2) because Charlene did not own the Kirby Ranch, the court lacked jurisdiction and/or authority to issue any orders relating in any way to that property; (3) the rents from the Jeffrey Circle Residence were community property jointly owned by Charlene and Robert; (4) because the rents were 50% his community property, that 50% could not be used to pay Pope for his services, which were Charlene's separate debt; and (5) no funds should be distributed from the estate unless and until ownership of the rents and ownership of the Kirby Ranch and the Jeffrey Circle Residence were finally determined. In her reply to Robert's opposition, the Trustee pointed out that the rents were the proceeds of the settlement between the Trustee and Downey, and hence were estate property.

After holding a hearing on the motion,[9] the bankruptcy court overruled Robert's objection and granted the compensation motion, by order entered June 9, 2011.

**4. The reconsideration motion.**

On June 20, 2011, a motion for reconsideration was filed by two people by the name of John Martin and Linda Martin. At the end of the motion, there is a signature for Linda Martin, "in pro per." Attached to the motion for reconsideration is a memorandum of points and authorities. At the end of the memorandum of

---

[8]Robert offered no evidence to support this assertion, nor have we found any evidence corroborating this assertion during our independent review of the docket and its contents.

[9]Robert never obtained the transcript from this hearing, so we do not know specifically what facts the court found or relied upon in granting the compensation motion.

10

points and authorities, there are signatures of a number of additional parties, including one for Robert. Parties other than Robert complained that they had inadequate notice of the compensation motion and that the court improperly prohibited them from appearing and presenting oral argument at the hearing on the compensation motion. But Robert is the only person who filed a notice of appeal, and as far as he is concerned, the reconsideration motion merely reiterates some of the same points he made in his opposition to the compensation motion.

After a hearing on the reconsideration motion, the bankruptcy court entered an order denying the reconsideration motion on August 18, 2011, and Robert timely filed a notice of appeal on August 31, 2011.[10]

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did Robert provide us with a sufficient record?

2. Did the bankruptcy court abuse its discretion in granting the Trustee's compensation motion and awarding roughly

---

[10]Even though Robert's notice of appeal only referenced the order denying the reconsideration motion, we will treat his appeal as also requesting review of the underlying compensation order. We may do so because the parties have fully briefed the issues arising from the underlying compensation order. See Lolli v. County of Orange, 351 F.3d 410, 414-15 (9th Cir. 2003); Wash. State Health Facilities Ass'n v. Wash. Dept. of Soc. & Health Servs., 879 F.2d 677, 681 (9th Cir. 1989); McCarthy v. Mayo, 827 F.2d 1310, 1313-1314 (9th Cir. 1987).

11

$12,200 to Pope?

3. Did the bankruptcy court abuse its discretion in denying the reconsideration motion?

**STANDARDS OF REVIEW**

A bankruptcy court order awarding compensation under § 330 is reviewed for abuse of discretion. Leichty v. Neary (In re Strand), 375 F.3d 854, 857 (9th Cir. 2004). Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). And if the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

If a "motion for reconsideration" is filed within 14 days of the entry of the order to which it relates, it is treated as a motion to alter or amend judgment under Civil Rule 59(e). Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001). If the reconsideration motion is filed beyond that time period, it is treated as a motion for relief from judgment under Civil Rule 60(b). Either way, the denial of such motions is reviewed for abuse of discretion. Id.; see also First Ave. W. Bldg., LLC v. James (In re OneCast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006); Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001); Clinton v. Deutsche

12

Bank Nat'l Trust Co. (In re Clinton), 449 B.R. 79, 82 (9th Cir. BAP 2011).

## DISCUSSION

**A. Robert did not provide us with essential transcripts.**

While Robert has appeared in this appeal in pro per, he is no stranger either to the bankruptcy courts or the federal appellate courts. In fact, he was the appellant in a seminal Ninth Circuit Court of Appeals case involving the scope of the automatic stay, Gruntz v. Cnty. of Los Angeles (In re Gruntz), 202 F.3d 1074 (9th Cir. 2000) (en banc). That appeal arose from Robert's bankruptcy case, which he filed many years ago, in 1988 (Bankr. C.D. Cal. Case No. RS-88-08310-MG). In his bankruptcy case, Robert filed an adversary proceeding seeking relief from a state court criminal conviction for nonpayment of child support, claiming that the criminal proceedings against him violated the automatic stay. See In re Gruntz, 202 F.3d at 1077-78. An en banc panel of the Ninth Circuit ultimately determined that the automatic stay did not apply to the criminal proceedings. Id. at 1088.

Robert not only has significant personal bankruptcy and appellate experience, but he also has had formal legal training.[11] Moreover, he knows how to order transcripts when he is so inclined. See Adv. No. RS-09-01223-MS, Doc. No. 41.

_____

[11]While the en banc decision did not mention it, one of the Ninth Circuit's other decisions notes that Robert has a law degree, but is not a member of the state bar. See Gruntz v. Cnty. of Los Angeles (In re Gruntz), 166 F.3d 1020, 1023, amended and superseded, 177 F.3d 728, rehr'g en banc granted and opn. withdrawn, 177 F.3d 729 (9th Cir. 2000).

13

However, the bankruptcy court's adversary and case dockets reflect that Robert never ordered nor obtained the transcripts from either the hearing on the compensation motion or the hearing on the reconsideration motion. By not ordering these transcripts, he has hamstrung our ability to review the bankruptcy court's orders for abuse of discretion.

Failure to order necessary transcripts may be grounds for dismissal of an appeal or summary affirmance. Kyle v. Dye (In re Kyle), 317 B.R. 390, 393 (9th Cir. BAP 2004), aff'd, 170 Fed. Appx. 457 (9th Cir. 2006); see also Syncom Capital Corp. v. Wade, 924 F.2d 167, 169 (9th Cir. 1991). But we also have discretion, when practicable and appropriate, to proceed with whatever review the absence of the requisite transcripts allows. See, e.g., In re Kyle, 317 B.R. at 393-94.

We will exercise our discretion here to proceed as best we can without the requisite transcripts. At the same time, we are entitled to infer, based on Robert's failure to provide them, that there would be nothing in the transcripts that would help Robert's arguments on appeal. Gionis v. Wayne (In re Gionis), 170 B.R. 675, 680-81 (9th Cir. BAP 1994).

**B. None of Robert's arguments on appeal have any merit.**

Robert makes the same arguments on appeal that he made in the bankruptcy court in opposition to the Trustee's compensation motion. First and foremost, Robert claims that the Kirby Ranch might not have been estate property because other people have asserted competing ownership claims thereto. According to Robert, unless and until there is a final judicial determination that Charlene owns some or all of the Kirby Ranch, the bankruptcy

14

court should not have authorized the Trustee either to employ or to compensate Pope for work done on behalf of the bankruptcy estate with respect to the Kirby Ranch.

Robert claims that his argument regarding ownership of the Kirby Ranch is jurisdictional. We disagree. There is nothing in the main bankruptcy jurisdiction statutes, 28 U.S.C. §§ 157 and 1334, stating or suggesting that bankruptcy courts lack authority to hear matters and issue orders otherwise affecting administration of the bankruptcy estate unless and until a final determination is made that property potentially impacted by the matters and orders is estate property. The Supreme Court has counseled that care must be taken to avoid transmuting substantive arguments into jurisdictional arguments. As it has stated: " . . . when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 516, 126 S.Ct. 1235, 1245 (2006), <u>cited with approval in</u>, <u>United Student Aid Funds, Inc. v. Espinosa</u>, --- U.S. ---, 130 S.Ct. 1367, 1377-78 (2010).

Furthermore, Robert's attempt to characterize this argument as jurisdictional defies common sense. If litigants could undermine the bankruptcy court's jurisdiction to enter § 327 employment orders and § 330 compensation orders by merely alleging that property potentially impacted by those orders might not be property of the estate, bankruptcy courts seldom if ever would be able to enter such orders over the objection of any interested party. This in turn would jeopardize the ability of bankruptcy trustees to expeditiously administer bankruptcy

15

estates.

At most, Robert's issue regarding the estate's interest in the Kirby Ranch goes to whether the services Pope performed were necessary or beneficial to the estate <u>at the time they were rendered</u>. This is among the factors the bankruptcy court must consider when ruling on a § 330 compensation request. See <u>Garcia v. U.S. Trustee (In re Garcia)</u>, 335 B.R. 717, 724 (9th Cir. BAP 2005).[12]

The necessity and benefit of the services rendered is measured based on circumstances as they existed at the time they were rendered and not based on the benefit of hindsight. See <u>In re Garcia</u>, 335 B.R. at 724; <u>In re Mednet</u>, 251 B.R. at 107. Here, we find it instructive that no one filed an objection when the Trustee proposed to employ Pope for precisely the same tasks that Pope later sought compensation for: the security and maintenance of the Kirby Ranch. Only when the Trustee later sought to pay Pope did Robert file an objection.

---

[12]<u>Garcia</u> lists all of the factors as follows:

(a) Were the services authorized?
(b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?
(c) Are the services adequately documented?
(d) Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?
(e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

<u>Id.</u> (citing <u>Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)</u>, 251 B.R. 103, 108 (9th Cir. BAP 2000), and <u>In re Strand</u>, 375 F.3d at 860).

16

In any event, at the time she sought authorization to employ Pope, the Trustee offered a sufficient showing of the necessity of securing and maintaining the Kirby Ranch. The Trustee feared she otherwise would expose the bankruptcy estate to a risk of liability unless the Kirby Ranch was properly secured and maintained. While Robert (and others) later alleged that Charlene might not actually own the Kirby Ranch, we were unable to find any paper filed in Charlene's bankruptcy case during the first several months of that case calling into question whether Charlene had any interest in the Kirby Ranch. In fact, as mentioned above, Robert asserted in his own early bankruptcy court filings that he and Charlene jointly owned the Kirby Ranch as community property, and Charlene claimed that the Kirby Ranch was her separate property. Regardless of whether the Kirby Ranch was Charlene's community or separate property, either type of ownership interest would have been sufficient to establish the Kirby Ranch as property of her bankruptcy estate. See § 541(a)(1) and (2).

Under these circumstances, Robert's belated raising of the issue regarding ownership of the Kirby Ranch does not establish that the bankruptcy court abused its discretion in authorizing the Trustee to compensate Pope in the approximate amount of $12,200.

Robert also argues that he and Charlene jointly owned the Jeffrey Circle Residence as community property, and that he thus had a 50% community property interest in the rents collected therefrom. According to Robert, the bankruptcy court should not have used his 50% share of the rents to pay Pope because the

17

obligation to pay Pope was Charlene's separate, post-dissolution debt.

Robert's rents argument ignores the fact that the court, without any objection from him, granted Downey's relief from stay motion concerning the Jeffrey Circle Residence. In conjunction with that motion, the Trustee had agreed to the relief Downey was seeking in exchange for Downey's agreement to let the Trustee keep the roughly $12,200 in rents she had collected. According to Downey, the rents collected otherwise would have been part of Downey's collateral under its first deed of trust against the Jeffrey Circle Residence.

But even if we were to disregard Downey's relief from stay motion and Downey's transfer to the Trustee of its interest in the rents, Robert still could not prevail on his rents argument. Assuming without deciding that Robert had a 50% community property interest in the rents, they still were property of Charlene's bankruptcy estate, 11 U.S.C. § 541(a)(2), and as such could be used to pay allowed administrative expenses of the estate, including the compensation awarded to Pope. The explicit language of the Bankruptcy Code supports this result.

Under § 541(a)(2), the non-debtor spouse's share of community property is classified as estate property, so long as that property is subject to the "sole, equal or joint management and control of the debtor" or is liable for allowable claims against the debtor. Even when dissolution proceedings are pending at the time of the debtor's bankruptcy filing, the non-debtor spouse's share of community property is property of the debtor's bankruptcy estate, unless the state court made a final

property division before the bankruptcy case was commenced. See Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1085 (9th Cir. 1998) (applying California law and holding that "until division, all community property of the divorcing couple is property of the bankruptcy estate pursuant to § 541(a)(2).").

In California, community property generally is subject to the equal management and control of either spouse. See Cal. Fam. Code § 1100(a); see also Teel v. Teel (In re Teel), 34 B.R. 762, 764 (9th Cir. BAP 1983) ("In California, with exceptions not here relevant, each spouse has management and control of community property . . . . Therefore, the community property of appellant and the debtor is property of the estate under both § 541(a)(2)(A) and (B)."). Moreover, the record here indicates that, if either spouse had sole management and control of the Jeffrey Circle Residence and the rents derived therefrom, it would have been Charlene. Robert has not disputed that Charlene held legal title to the Jeffrey Circle Residence as her sole and separate property, that she encumbered the Jeffrey Circle Residence by executing the first deed of trust held by Downey, and that she rented out the Jeffrey Circle Residence, which led to the accrual of the rents collected by the Trustee.

In any event, regardless of whether the rents were equally controlled by Robert and Charlene or solely controlled by Charlene, the entire amount of the rents constituted property of Charlene's bankruptcy estate under § 541(a)(2)(A), even if Robert held a 50% community property interest in the rents.

Having established that all of the rents were estate property, it also is beyond cavil that the bankruptcy court

properly could authorize the Trustee to use all of the rents to compensate Pope. Compensation awarded under § 330 qualifies as an allowed § 503(b)(2) administrative expense, which is subject to payment from all estate assets, including § 541(a)(2) estate property. See § 726(c)(1) ("Claims allowed under section 503 of this title shall be paid either from property of the kind specified in section 541(a)(2) of this title, or from other property of the estate, as the interest of justice requires.").

Nor can it seriously be doubted that the interest of justice permitted the bankruptcy court to authorize the Trustee to compensate Pope from the rents. The rents were the only funds available to provide any compensation. The Trustee duly obtained authorization to employ Pope, without any written opposition thereto. Additionally, the Trustee had sufficient grounds for believing at the time that the best interests of the estate would be served by employing Pope. Only after Pope had performed his services and sought payment did Robert file a written objection, questioning for the first time the necessity and benefit to the estate of Pope's employment and services. Moreover, the record here supports the conclusion that Pope's services were necessary and beneficial to the estate at the time of his employment, as discussed above. Finally, payment of all of the rents to Pope defrayed only a portion of his out-of-pocket expenses and constituted only a small fraction of the total compensation he claimed entitlement to.

In sum, Robert's rents argument is based on a false premise: that his alleged 50% community property interest in the rents prohibited the bankruptcy court from authorizing use of all of

20

the rents to pay compensation to Pope. As explained above, the Bankruptcy Code explicitly permits such use of § 541(a)(2) estate property.[13] Because Robert's rents argument is fatally flawed, it does not support reversal of the bankruptcy court's compensation order.

As for the bankruptcy court's denial of the reconsideration motion, Robert has not focused on that ruling in his appeal briefs. Moreover, to the extent it pertained to Robert, the reconsideration motion merely reiterated the same types of arguments Robert had made in his opposition to the Trustee's compensation motion. Accordingly, for the same reasons we affirm the bankruptcy court's compensation order, we may affirm its denial of the motion for reconsideration. See Am. Ironworks & Erectors, Inc., 248 F.3d at 899 (holding that, when the appellants' motion for reconsideration merely reargued their original position, trial court did not abuse its discretion in denying the reconsideration motion).

Robert's appeal briefs contain other complaints regarding the bankruptcy court's rulings and the Trustee's actions. These

---

[13]Robert's rents argument suggests he believes that, under California law, his 50% share of community property could not be used to pay a separate debt of Charlene's, including any compensation owed to Pope. Assuming without deciding that this is a correct statement of California law, it would be preempted to extent it conflicted with the Bankruptcy Code provisions explicitly permitting the court to authorize payment of administrative expense claims from § 541(a)(2) estate property. See 6 Collier on Bankruptcy ¶ 726.05[1] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2012) (citing In re Teel, 34 B.R. at 764 and stating: " . . . where there are differences between the bankruptcy distribution scheme and state law, the state law scheme is preempted.").

21

additional complaints can be categorized as: (1) irrelevant to the orders on appeal, (2) incomprehensible, and/or (3) patently inconsistent with the record. It suffices for us to say that none of these other complaints justify reversal of the orders on appeal.

## CONCLUSION

For all of the reasons set forth above, we AFFIRM the bankruptcy court's orders granting the Trustee's compensation motion and denying the reconsideration motion.