FILED

NOT FOR PUBLICATION

DEC 17 2019



SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1349-SGTa |
| YAVAUGHNIE RENEE WILKINS, | Bk. No.  2:16-bk-12328-SK |
| Debtor. | |
| YAVAUGHNIE RENEE WILKINS, | |
| Appellant, | |
| v. | MEMORANDUM* |
| LAW OFFICES OF WESLEY H. AVERY, APC; YOURIST LAW CORPORATION, APC; MENCHACA & COMPANY LLP; JOHN J. MENCHACA, Chapter 7 Trustee, | |
| Appellees. | |

Argued and Submitted on November 21, 2019
at Pasadena, California

Filed – December 17, 2019

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

—————

Appearances:     Andrew M. Wyatt argued for appellant; Wesley Howard
Avery argued for appellees John J. Menchaca, Chapter 7
Trustee and Law Offices of Wesley H. Avery, APC.

—————

Before: SPRAKER, GAN, and TAYLOR, Bankruptcy Judges.

INTRODUCTION

Chapter 7[1] debtor Yavaughnie Renee Wilkins appeals from the
bankruptcy court's order awarding compensation and reimbursement of
expenses to the Law Offices of Wesley H. Avery, APC, Yourist Law
Corporation, APC, and John J. Menchaca, chapter 7 trustee (collectively,
"Appellees").[2]

Wilkins mostly restates prior grievances and past disputes. She
particularly focuses on the proceedings leading to the conversion of her

—————

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal
Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of
Civil Procedure.

[2] In the bankruptcy court, Wilkins also objected to the fee application of Brager
Tax Law Group, APC. But Wilkins abandoned her appeal of the order approving
Brager's fees. Wilkins notified the Panel of this abandonment in her Response To
Clerk's Notice filed on February 25, 2019 (BAP No. CC-18-1349, Doc. No. 9).

chapter 13 bankruptcy to chapter 7 and the court's findings that she intentionally omitted and undervalued assets in her bankruptcy schedules. But Wilkins' concerns regarding the conversion of her case are largely irrelevant to the fee and expense awards at issue in this appeal. Many of Wilkins' other arguments were not raised in the bankruptcy court. As for those arguments that Wilkins did raise in the bankruptcy court, she has not established that the bankruptcy court's determinations amounted to reversible error. The bankruptcy court found that Appellees' services were beneficial to Wilkins' bankruptcy estate and that the fees charged for those services were reasonable under the circumstances. On this record, those findings were not clearly erroneous. Accordingly, we AFFIRM.

## FACTS

A.    Commencement And Conversion of Wilkins' Bankruptcy Case.

Wilkins commenced her bankruptcy case in February 2016 by filing a voluntary chapter 13 petition. The principal asset of the estate was a residence located in San Jose, California. Wilkins filed her bankruptcy schedules including a Schedule A/B listing her prepetition assets and a statement of her financial affairs. Wilkins amended her Schedule A/B and statement of financial affairs in June 2016.[3]

---

[3] In addition to the record provided by the parties, we have exercised our discretion to review and consider the bankruptcy court's case docket and the docket in the related adversary proceedings. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*,

(continued...)

In both her original and amended Schedules A/B, Wilkins disclosed jewelry valued at $500. She later provided Menchaca with an inventory of her jewelry as of the petition date. Menchaca also obtained a summary of insurance for the items of jewelry listed on the inventory and covering other items. For the period November 10, 2014 through November 10, 2015, Wilkins insured 15 items of jewelry in the aggregate amount of $121,303. Wilkins also admitted in the inventory to having pawned 19 other pieces of jewelry for roughly $20,000 from Beverly Loan Company in 2015. None of these pawned items were reported in her original or amended statements of financial affairs.

In her original and amended Schedules A/B, Wilkins listed the value of her clothing as $1,000. This listing did not include a fur coat she insured for $21,595.00.

As for collectibles, Wilkins' original Schedule A/B listed no collectibles of value, and her amended Schedule A/B listed $1,000.00 in collectibles. In contrast, the same insurance summary and inventory show that Wilkins insured eleven pieces of art in 2015 for an aggregate amount of $167,950.00.

Based on revelations like these, the bankruptcy court entered an order in February 2017 converting Wilkins' bankruptcy case from chapter

---

[3](...continued)
389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

13 to chapter 7.[4] The court particularly was concerned about the insured values for the jewelry, the art objects, and the mink coat. In light of these concerns, the court found that "debtor intentionally omitted personal property assets in her petition and may have significantly undervalued the personal property assets that she actually did disclose." Hr'g Tr. (Feb 16, 2017) at 34:17-20. The court further found that Wilkins' misconduct was egregious., which it defined as actions "that are so obviously inconsistent with what is right or proper as to appear to be flouting of law or morality." Hr'g Tr. (Feb 16, 2017) at 35:13-15.

Wilkins filed a notice of appeal of the conversion order in November 2017. We dismissed that appeal as untimely. *See Wilkins v. Menchaca (In re Wilkins)*, 587 B.R. 97, 107 (9th Cir. BAP 2018).

B.     Appellees' Employment And Fee Applications.

During the course of the chapter 7 case, Menchaca obtained court approval to employ professionals to assist him. Menchaca hired Avery as general bankruptcy counsel, Yourist to serve as his special litigation counsel, and the accounting firm of Menchaca & Company LLP to serve as accountants. None of the employment applications were opposed.

1.     Avery's Fee Application And Wilkins' Objection.

In September 2018, Avery filed his final fee application, and he

---

[4] These same facts also led to a default judgment denying debtor a discharge entered in November 2018.

amended his final fee application in November 2018. He requested compensation of $206,079.50 based on 367.2 hours of services. He also requested expense reimbursement of $5,628.34.[5]

a.      Asset Disposition.

Nearly half of Avery's services were provided in assisting Menchaca in disposing of the estate's assets. Avery's asset disposition services mostly concerned the sale of, and Wilkins' eviction from, the San Jose residence. As explained in the fee application, the sale and eviction process was protracted and expensive. Avery attributed this to Wilkins' filing of numerous papers challenging the sale and eviction. Wilkins also sought to stay the order for possession of the property.

As recounted by Avery, Wilkins resisted the sale and eviction process at every turn. Among other things, the first court-approved sale fell though after she refused to allow the real estate broker and the first buyers to enter the property. As a result, Menchaca had to find a new buyer and obtain court approval for the second sale. He only was able to do this after completing eviction proceedings against Wilkins with the assistance of the United States Marshals to remove her from the residence. Menchaca also had to make arrangements for, and abandon, all items Wilkins left at the

---

[5] As noticed, Avery's fee application requested $206,079.50 fees. His amended fee application reflected $210,057.50 in fees incurred. At the hearing on his fee application, Avery waived the difference.

6

premises.

        b.     Section 727 Litigation.

Another quarter of Avery's services were incurred prosecuting an objection to discharge adversary proceeding against Wilkins. Avery's services in this category included obtaining an order striking Wilkins' answer and proving up his entitlement to a default judgment. In addition, Avery filed numerous status reports, and obtained orders continuing the status conference from time to time. The continuances were necessitated in part by the pendency of Wilkins' untimely conversion order appeal.

As for the motion for entry of a default judgment, the court entered an order granting the motion, but only after holding a hearing that spanned the course of an entire day.

        c.     General Case Administration.

Avery also billed a substantial portion of fees to what he described as general case administration activities. Roughly a quarter of Avery's general case administration fees concerned a Civil Rule 60(b) motion Wilkins filed seeking reconsideration of the conversion order. On behalf of Menchaca, Avery opposed this motion. The court denied the motion after a contested hearing.

Another 10% to 15% of the case administration fees concerned services Avery performed related to Wilkins' untimely appeals of the conversion order and three other bankruptcy court orders. Ultimately, this

Panel dismissed all of these appeals as untimely.

        d.     Meeting Of Creditors.

The only other category involving incurred fees in excess of $10,000.00 concerned Wilkins' first meeting of creditors. Even though Wilkins' case was converted in February 2017, the chapter 7 first meeting of creditors was not completed until October 2018. According to the docket, Menchaca continued the meeting of creditors 13 times before concluding it. Avery stated that he incurred much of the time in this category preparing for the meetings and questioning Wilkins under oath at several of the meetings. According to Avery, this questioning eventually led to the denial of Wilkins' discharge.

        e.     Wilkins' Objection.

Wilkins objected to Avery's fee application. Virtually all of Wilkins' papers consisted of specific objections to roughly 30 of Avery's individual time entries.[6] In most of her objections, Wilkins challenged the amount charged as excessive. Avery filed a reply responding to each of these specific objections. The bankruptcy court reviewed each of these objections and each of Avery's responses. In all but three instances, the bankruptcy court agreed with Avery's claim that the fees he incurred were reasonable

---

[6] A small fraction of Wilkins' objections challenged a few of Avery's expenses for which he sought reimbursement. Wilkins has not pursued on appeal any of these challenges to the expenses.

in amount and that Avery performed the services within the scope of his duties.

Wilkins also challenged Avery's billable rate of $585. But the bankruptcy court found that Avery's rate was appropriate given his level of experience and was commensurate with other rates that were charged in the community. The bankruptcy court also noted that it approved Avery's billable rate as part of its order on Avery's uncontested employment application.

Finally Wilkins contended that Avery never seriously engaged in good faith settlement negotiations. The court rejected this allegation. Instead it found that Avery's settlement-related services were performed within the scope of his duties and that the compensation sought for those services was reasonable.

2.      Yourist's Fee Application And Wilkins' Objection.

In September 2018, Yourist filed his final fee application. He requested compensation of $44,225.00 based on 118 hours of services. He also requested expense reimbursement of $157.11.

The vast majority of Yourist's services concerned the recovery and sale of Wilkins' personal property assets. Most of the relevant assets were held in a rented storage facility owned by Extra Space Storage, Inc. After Extra Space Storage refused to release the stored property to Menchaca, Yourist prepared and filed a turnover complaint against the storage

9

company. Wilkins also was named as a defendant. According to Yourist, Extra Space Storage filed an answer in which it disputed all of the material allegations of the turnover complaint. Subsequently, Menchaca and Extra Space Storage agreed to settle the dispute. Yourist assisted the trustee in negotiating, documenting, and obtaining court approval of the settlement. Yourist also assisted the trustee's efforts to inspect, take possession of, and sell Wilkins' personal property by auction sale.

Wilkins objected to Yourist's fee application. But Wilkins' two-page objection was, at best, only tangentially related to the services Yourist performed on behalf of the estate.[7] Instead, Wilkins's objection focused on services Yourist performed on behalf of the Schreiber Family Trust ("SFT"), a secured creditor of Wilkins. Wilkins specifically challenged the fees incurred by Yourist prosecuting the motion to convert Wilkins' case from chapter 13 to chapter 7. Virtually all of the work Yourist performed for SFT, including work on the conversion motion, pre-dates his services as special counsel for Menchaca. Yourist's work for SFT is memorialized in SFT's proof of unsecured claim for attorney's fees, which SFT filed in the bankruptcy court on April 21, 2016 and amended from time to time.

Wilkins complained that the billing records attached to the proof of

---

[7] Wilkins filed additional papers objecting to Yourist's fees. However, these additional papers generally only reiterated the grievances Wilkins aired in her main objection filed on November 30, 2018.

claim were heavily redacted. But this concern simply does not apply to Yourist's fee application for compensation from the estate as an administrative expense. The billing records Yourist submitted to support his application for fees incurred serving as Menchaca's special counsel were not redacted.

Wilkins also argued that, as a result of Yourist's deception while prosecuting the conversion motion, the estate only recovered $24,000.00 on her personal property assets in spite of the fact that Yourist claimed they were worth over $500,000.00. The bankruptcy court was not persuaded by Wilkins' objection. The court effectively rejected her allegations as unproven and largely irrelevant to the services Yourist performed on behalf of the estate.

3.     Menchaca's Fee Application And Wilkins' Objection.

In November 2018, Menchaca filed his Final Report. He reported gross receipts of $1,032,813.50 and a cash balance of roughly $635,000.00. Based on the amount of funds available for distribution, he requested the maximum amount of commission permissible under § 326(a) of $52,477.19. He also requested reimbursement of $132.50 in expenses. After payment of all claims against the estate, Menchaca's proposed final distribution contemplated payment of roughly $22,000.00 in surplus estate funds to the debtor.

On December 4, 2018, Wilkins filed an omnibus objection to the fee

11

applications of Menchaca, Yourist, Avery, and Brager. Of all the papers Wilkins filed objecting to fees, the December 4, 2018, omnibus objection was the only one that discussed Menchaca's request for trustee fees. Wilkins' argument in the omnibus objection is similar to her argument in her objection to Yourist's fee application. She focuses on the conversion proceedings, which she said amounted to a fraud on her creditors and the court. In addition, she characterized Menchaca's efforts to liquidate her assets and oppose her discharge as theft and fraud, even though chapter 7 trustees have a statutory duty to undertake these tasks under § 704.

The bankruptcy court reviewed the omnibus objection and considered it in assessing the amount of Appellees' fees to approve. At the hearing on the fee applications and objections, the bankruptcy court described the omnibus objection as follows:

> In the opposition to all fee applications Wilkins spends the entire opposition making allegations against Avery, Yourist, the Trustee and Brager personally. She doesn't highlight any billing entry, alleges that all of the fee applications -- fee applicants have committed fraud and despite losing her discharge disputes that she acted fraudulently. Wilkins also spent considerable time disputing rulings against her in the case.

Hr'g Tr. (Dec. 20, 2018) at 25:17-24.

On December 21, 2018, the bankruptcy court entered its order

awarding fees and expenses to the Appellees.[8]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court abuse its discretion when it awarded Avery compensation and reimbursement of expenses?

2.  Did the bankruptcy court abuse its discretion when it awarded Yourist compensation and reimbursement of expenses?

3.  Did the bankruptcy court abuse its discretion when it awarded Menchaca compensation and reimbursement of expenses?

## STANDARDS OF REVIEW

We review appeals from orders awarding compensation to the trustee and other estate professionals under § 330 for an abuse of discretion. *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911, 915 (9th Cir. BAP 2012) (citing *Ferrette & Slater v. U.S. Trustee (In re Garcia)*, 335 B.R. 717, 723 (9th Cir. BAP 2005)).

The bankruptcy court abuses its discretion if it applies an incorrect

---

[8] Wilkins failed to specifically and distinctly argue that the bankruptcy court erred in awarding fees to the accountants. Consequently, there is no need to discuss the accountants' fee application, Wilkins' objection thereto, or the accountants' fee award. *See Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010) (arguments not specifically and distinctly made in the appellant's opening brief were deemed forfeited); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (same).

legal rule or its findings of fact are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d, 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

A.      Applicable Law.

Under § 330(a), a bankruptcy court may award a trustee and his or her professionals compensation and reimbursement of expenses. The statute sets forth the criteria the bankruptcy court needs to consider in addressing professional fee applications. *See In re Garcia*, 335 B.R. at 723-24.[9]

---

[9] The criteria consist of "all relevant factors" and include the following:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(continued...)

14

Additionally, the court may not award compensation for an unnecessary duplication of effort. Nor can the court award fees for services that were not reasonably likely to benefit the estate and were unnecessary for case administration. § 330(a)(4)(A); *see also In re Garcia*, 335 B.R. at 724 (listing additional factors bankruptcy court needs to consider).[10]

Wilkins has not questioned either in the bankruptcy court or on appeal whether the bankruptcy court considered the correct criteria. Under the circumstances of this case, we have no doubt that the bankruptcy court was aware of and applied the correct legal standards. Therefore, we will limit our discussion to the issues Wilkins has raised and has specifically

---

[9](...continued)
§ 330(a)(3).

[10] *In re Garcia's* additional factors include the following:

(a) Were the services authorized?

(b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?

(c) Are the services adequately documented?

(d) Are the fees [requested] reasonable, taking into consideration the factors set forth in section 330(a)(3)?

(e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

*In re Garcia*, 335 B.R. at 724 (citing *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 108 (9th Cir. BAP 2000)).

and distinctly argued in her opening appeal brief.

B.    Issues Wilkins Raises For The First Time On Appeal.

      1.    Avery - Routine Trustee Duties Argument.

On appeal, Wilkins has abandoned the specific line item objections she asserted to Avery's fee application in the bankruptcy court. Instead, she principally argues that many of the services Avery performed were routine tasks that Menchaca should have completed without the assistance of counsel. To support this argument, she claims that entire categories of Avery's fees are the type of services Menchaca should have performed for himself. Wilkins attacks all of Avery's fees in the following categories: (1) claims administration and objections; (2) employment and fee applications; (3) finance; (4) case administration; and (5) asset disposition (fees related to Menchaca's efforts to evict Wilkins from her residence).

We acknowledge that counsel cannot be compensated for performing the chapter 7 trustee's routine duties. *See In re Garcia*, 335 B.R. at 724-25. On the other hand, specific circumstances can and do arise in individual bankruptcy cases where the assistance of counsel and legal expertise is needed in order to enable the chapter 7 trustee to complete his statutory duties. *Id.* at 725 (citing *United States Tr. v. Porter, Wright, Morris & Arthur (In re J.W. Knapp Co.)*, 930 F.2d 386, 388 (4th Cir. 1991)).

As we made clear in *In re Garcia*, the trustee's need for the assistance of legal counsel in completing any given task is an inherently factual issue.

*See id.* at 726-29. As a consequence of Wilkins' failure to raise this issue in her bankruptcy court objections, the parties never developed the record with respect to this issue. More specifically, Avery never had the opportunity to present the bankruptcy court with evidence and argument specifically countering Wilkins' belated claim that Avery was seeking compensation for performing Menchaca's routine trustee duties. Nor did the bankruptcy court have the opportunity to render findings specifically accepting or rejecting Wilkins' belated contention.

That said, much of what we have reviewed in the record supports the bankruptcy court's fee award to Avery notwithstanding Wilkins' trustee duties argument. For instance, the bankruptcy court repeatedly found that Avery's billing entries (those Wilkins specifically objected to) represented work he performed within the scope of his duties as Menchaca's general bankruptcy counsel. Furthermore, our independent review of Avery's billing entries reveals that much of the work Wilkins now belatedly contests plainly involved preparation and filing of legal documents or opposing Wilkins' positions and actions. In these instances, Avery's legal assistance unequivocally facilitated and expedited the completion of Menchaca's trustee duties.

In the final analysis, Wilkins cannot complain now, for the first time on appeal, that neither Avery nor the bankruptcy court expressly addressed whether any of his services should have been performed by

17

Menchaca without the assistance of legal counsel. We generally will not address factual issues for the first time on appeal. *See Mano-Y&M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive an issue by failing to raise it in a bankruptcy court"); *Samson v. W. Capital Partners, LLC (In re Blixseth)*, 684 F.3d 865, 872 n.12 (9th Cir. 2012) (appellate court may decline to address argument not raised before bankruptcy court).

2.      Yourist – Conflict Of Interest Argument.

Also for the first time on appeal, Wilkins argues that Yourist's representation of SFT and his services as Menchaca's special litigation counsel in the turnover action gave rise to an impermissible conflict of interest. According to Wilkins, the estate's interests in the turnover action were directly adverse to SFT's interests. But Wilkins never identified what this adverse interest was, and § 327(c) specifically recognizes that special counsel to a trustee in a chapter 7 case is not disqualified merely because he or she previously represented a creditor. Our review of the record has failed to reveal any conflict. In any event, the presence or absence of an adverse interest also is a factual issue we decline to address for the first time on appeal. *See, e.g.*, *In re Mortgages Ltd.*, Case No. 2:08-bk-07465-rjh, 2008 WL 5024925, at \*1–3 (Bankr. D. Ariz. Aug. 14, 2008) (marshaling facts pertaining to alleged adverse interest); *In re Elias*, Case No. 02-41640, 2005 WL 4705220, at \*5-6 (Bankr. D. Idaho June 10, 2005) (same).

3.      Yourist – Duplicative Services Argument.

Wilkins also complains for the first time on appeal that Yourist's services for SFT and his services for Menchaca as special counsel were duplicative. Given the divergent timing of the services rendered and the limited nature of Yourist's special counsel role, this argument makes no sense. At bottom, while the bankruptcy court did not make a specific finding on this issue, there was no apparent need for it to do so for two reasons: (1) the services Yourist performed on behalf of SFT did not overlap with the services he performed for Menchaca; and (2) Wilkins did absolutely nothing in the bankruptcy court to indicate that an explicit ruling on duplication of services was needed in this context. In any event, the bankruptcy court's overarching determination that Yourist's fees were reasonable and his services were beneficial to the bankruptcy estate are inconsistent with Wilkins' argument that Yourist's services for SFT and Menchaca were duplicative. As we previously have stated:

> As an appellate court, we must construe the bankruptcy court's findings of fact favorably, such that any doubt as to what the bankruptcy court meant is resolved in favor of upholding rather than invalidating the bankruptcy court's judgment. As a result, "whenever, from facts found, other facts may be inferred which will support the judgment, such inferences will be deemed to have been drawn."

*Kelly v. Merrill (In re Merrill)*, BAP No. CC-13-1370-KuPaTa, 2014 WL 1244791, at *6 (9th Cir. BAP Mar. 26, 2014) (quoting *Brock v. Big Bear Market*

19

*No. 3*, 825 F.2d 1381, 1384 (9th Cir. 1987)).

Thus, Wilkins' duplication of services argument does not support reversal of the bankruptcy court's fee order.

4.      Menchaca – Argument Attacking Trustee's Commission.

The sole issue Wilkins raises on appeal with respect to Menchaca's fee application also is new. She claims that Menchaca's statutory fee under §§ 326 and 330(a)(7) should have been reduced or denied because he impermissibly delegated his routine duties to Avery and to his accountants. Whether Menchaca permitted his professionals to perform his routine trustee duties is a question of fact, and the record was not fully developed on this issue because Wilkins did not raise it in the bankruptcy court. Therefore, we decline to reverse on this basis. We note, however, that the bankruptcy court necessarily found these fees reasonable when it approved Menchaca's application. The record supports this finding and does not support Wilkins' general argument that services should have been performed by Menchaca rather than his professionals, or that Menchaca's commission should be reduced because he delegated the trustee's responsibilities to his professionals.

C.    Wilkins' Remaining Issues.

1.      Avery – Billing Rate Argument.

Wilkins asserts that the court erred in approving Avery's fees based on a billing rate of $585 per hour. The bankruptcy court noted that it

approved this billing rate when it granted Menchaca's unopposed motion to employ Avery as his general counsel. The court also found that this rate was reasonable in light of Avery's qualifications and commensurate with other rates within the Central District of California. The bankruptcy court's determination is consistent with Ninth Circuit authority. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (holding that the reasonableness of billing rates typically is assessed by comparison to the prevailing rates within the district).

We recognize that Wilkins strongly disagrees with the bankruptcy court's determination regarding Avery's billing rate. But Wilkins has not presented us with any law or facts that would support reversal of this determination. Nor are we aware of any. In short, Wilkins' disagreement does not constitute a basis for reversal.[11]

2.     Avery – Bad Faith Failure To Settle Argument.

Wilkins next asserts that the bankruptcy court should have reduced Avery's fees because Avery refused to engage in meaningful settlement discussions in good faith. Wilkins raised this issue in her bankruptcy court objection, but Avery told a much different story:

---

[11] Wilkins alternately argued that Avery should have reduced his billing rate for less demanding tasks or utilized his less expensive staff members to accomplish these tasks. But the bankruptcy court found the fees it awarded to Avery to be reasonable in amount. Nothing in Wilkins' appeal briefs persuades us that the bankruptcy court's reasonableness finding was illogical, implausible, or without support in the record. *Hinkson*, 585 F.3d at 1262.

No serious settlement discussions ever took place and most certainly no deal was ever struck. The Debtor's position never [wavered] – she wanted the Trustee to simply go away. Debtor's continued failure to cooperate with the administration of the Estate (such as refusing to move out of the [real] property until the US Marshals were at her door), or to engage in meaningful settlement discussions resulted in her own economic destruction. Her prepetition combative conduct continued post-petition, which is why she finds herself in the position she is in today.

Avery Decl. (Dec. 12, 2018) at ¶ 37; *see also id.* at ¶ 31 ("[Debtor's] continued failure to cooperate or engage in meaningful settlement discussions resulted in incurring additional attorney fees.").

In making its findings the bankruptcy court accepted Avery's version of events concerning the occurrence of settlement discussions. This was not error. Wilkins has not presented anything to suggest that the bankruptcy court's crediting of Avery's account was illogical, implausible, or without support in the record. *Hinkson*, 585 F.3d at 1262.

3. Yourist – Benefit To The Estate Argument.

There is one other issue we need to address. Wilkins assails Yourist because he incurred $44,225.00 in fees facilitating Menchaca's recovery and liquidation of the personal property held in storage. Wilkins points out that the gross sales receipts for these assets were only $24,187.50 and that the net proceeds after deducting the costs of sale were only $13,755.42. Wilkins posits that it was per se unreasonable to incur so much in fees to recover so

22

little in net proceeds.

The bankruptcy court believed otherwise. Though the bankruptcy court needed to, and did, consider the results achieved by Menchaca and his professionals in accomplishing their given tasks, it nonetheless found all of the fees Yourist incurred on behalf of the estate to be reasonable.

The mere fact that the sale of Wilkins' personal property only yielded modest net sale proceeds does not persuade us that the bankruptcy court's approval of the fees was error. Estate professionals are not expected to guaranty that their services will result in a material benefit to the bankruptcy estate. *In re Garcia*, 335 B.R. at 724. "Instead, a professional need demonstrate only that the services were reasonably likely to benefit the estate at the time rendered." *Id.* (citing *In re Mednet*, 251 B.R. at 108). The estate had nonexempt personal property of disputed value that required legal action to recover the property before liquidating it. The bankruptcy court approved these fees having presided over those actions, and was well aware of the valuation issues at the heart of this bankruptcy. Again, Wilkins has not shown why the court's approval of the challenged fees was illogical, implausible, or unsupported by the record. Accordingly, we reject Wilkins' benefit to the estate argument.[12]

---

[12] Wilkins additionally argued that Yourist failed to exercise reasonable billing judgment. According to Wilkins, Yourist demonstrated this failure by ignoring facts allegedly showing that he had misconstrued documents produced by Wilkins'

(continued...)

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order awarding compensation and reimbursement of expenses to the Appellees.

---

[12](...continued)
accountant Robert Miller. This argument is irrelevant to the fees the court awarded Yourist for serving as special counsel to the trustee. Yourist's construction of the Miller documents only pertained to the work Yourist performed for SFT in moving for conversion of Wilkins' chapter 13 case. The conversion motion was not part of Yourist's fee application and is beyond the scope of this appeal.